## DAVID BELL v. BOWERS STORES, INC., et al.

Western Section. December 31, 1926.

No petition for Certiorari was filed.

1. **Negligence. Elements necessary to be proved.**
In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him. (2) A negligent breach of that duty. (3) Injuries received thereby, resulting proximately from the breach of that duty.

2. **Negligence. Negligence is not presumed because of an injury.**
The mere fact of an injury never raises a presumption of negligence.

3. **Negligence. Doctrine of "Res Ipsa Loquitur" defined.**
When a thing which has caused an injury is shown to be under the management of the party charged with negligence and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care.

4. **Negligence. Doctrine of Res Ipsa Loquitur does not apply in an action to recover against a storekeeper for selling food which caused plaintiff's illness.**
In an action to recover against a storekeeper for injuries sustained from sickness alleged to have been caused by eating sardines sold by the defendant, held that the doctrine of res ipsa loquitur did not apply.

5. **Innkeepers. An innkeeper is required to use only reasonable care in the selection and preparation of the food which he sells.**
Proprietor of a hotel, restaurant, lunch-room or eating place is bound to use only that degree of care in the selection and preparation of his food which a reasonably prudent man skilled in the art of selecting and preparing food for human consumption would be expected to exercise in the selection and preparation of food for his own private table.

6. **Sales. Warranty. One serving food to be immediately consumed does not impliedly warrant that it is wholesome.**
The decided weight of authority, though there are some cases to the contrary, is to the effect that, in the absence of statute, one serving food to be immediately consumed on the premises is neither an insurer of the fitness and wholesomeness of the food served, nor liable upon an implied warranty thereof.

7. **Sales. Warranty. Merchant selling canned goods does not impliedly warrant that they are fit for consumption.**
A grocer selling a box of sardines does not impliedly warrant that the sardines are fit for consumption.

8. **Negligence. Evidence held to show grocer not negligent in the sale of a box of sardines which caused customer's illness.**

   In an action to recover for injuries sustained from sickness alleged to have been caused from eating a box of sardines where the evidence showed that the sardines sold were ordinary stock and there was nothing in their appearance to show that they were bad and the grocer used ordinary care in serving them, held that defendant was not guilty of negligence.

9. **Sales. Warranty. There is no implied warranty under the Uniform Sales Act. Chapter 118, of the Acts of 1919, where the buyer does not rely upon the representations of the salesman.**

   Where a buyer does not reply upon the representations of the salesman in selecting food there is no implied warranty that the food is fit for consumption.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Affirmed.

Brewer & Tipton, of Memphis, for plaintiff in error.

S. O. Bates & C. B. Frayser, of Memphis, for defendant in error.

OWEN, J. David Bell has appealed from a judgment of the circuit court of Shelby county dismissing his suit. The suit was instituted against the Bowers Stores, Inc. and Fly & Hobson Company, both corporations, it appearing that Fly & Hobson, a wholesale grocery concern, owns, controls and operates a chain of retail stores in Memphis, Tennessee, incorporated under the style of ''Mr. Bowers Stores.''

Plaintiff is a colored man. In January, 1926, he was working for a construction company in Memphis, Tennessee, and at noon on the 7th of said month, he visited one of defendant's stores and bought two cans of sardines. He ate the sardines, and in about an hour and a half or two hours after eating same, and after he returned to his work, he became ill. He was sent to the Memphis General Hospital, where he remained until the next day and returned to his home, and was sick for some days thereafter.

This action was brought after the purchase of the sardines and plaintiff's illness, there being three counts in the declaration, and in one count it is alleged that the defendant by implied warranty warranted that the sardines were fit to eat and good. This count bases the damages upon a breach of warranty. Another count alleges that the defendants were guilty of negligence in the sale and service of said sardines; that the sardines were unfit to eat, and the plaintiff by eating same soon thereafter became seriously ill. The other count in the declaration neither charges a breach or warranty nor negligence. It is a mere statement of the facts, surrounding, the purchase and eating of the sardines. The defendant filed a plea of not guilty. At the conclusion of plaintiff's proof the court sustained a motion for a directed verdict, the defendant insisting (1) that there

was no implied warranty in the sale of the sardines; (2) that there was no evidence that the defendants were negligent in the sale of the cans of sardines; (3) there is no evidence that the sardines were unfit for food; (4) there is no evidence that the sardines caused the injury, and (5) there is no evidence upon which to base a judgment.

This motion was sustained and the plaintiff's suit was dismissed.

The plaintiff seasonably filed his motion for a new trial, based upon the action of the court in directing a verdict in behalf of the defendant, which motion was overruled. He prayed and was granted an appeal to this court, and has assigned five errors, all of which are based upon the action of the court in directing a verdict in behalf of the defendants.

It appears that defendants had five grounds in their motion for a directed verdict. The motion was sustained, and the assignments of error are leveled at each ground in the motion for a directed verdict.

We will treat the assignments of error together. As we understand this record, there are two propositions which should be considered and which are made by the two counts in plaintiff's declaration—(1) was there an implied warranty which was breached in the sale of the sardines; (2) was there any negligence in the sale and the service of the sardines, for which breach of the alleged warranty, and for which alleged negligence. would the defendants be liable.

The facts, briefly stated, are as follows: The plaintiff testified that prior to his illness on the 7th of January, 1926, he had been in good health; that he had not been ill a day since he had influenza in 1918; that the only thing he had eaten prior to eating the two cans of sardines was two eggs and a cup of coffee for breakfast; that he was working every day for a construction company. He paid six cents each for the two cans of sardines. Each of these cans was about four inches long, about two and three-fourths inches wide, and about a half inch deep. Sardines are small fish. When he purchased the sardines, the clerk who waited on him directed plaintiff to take the sardines out of the tin can and put them in a wooden tray. The cans were opened by the plaintiff and he ate the contents of said two cans while seated by the stove in defendant's store. He followed the clerk's directions and ate the sardines from a wooden tray. It doesn't appear that he ate anything else with the sardines. He testified that about two hours after he had eaten the sardines, and while he was back at his work, he became very sick and vomited considerable; suffered pains in his stomach and bowels; that the illness produced diarrhea, and within a short time after he became ill an ambulance was called and he was carried to the Memphis General Hospital where he remained until twelve o'clock the next day, when he returned to his home; that he had not felt strong since he had the attack, about two hours after eating the sardines.

He is corroborated by the foreman for the construction company and two of his (plaintiff's) fellow-servants as to his becoming ill about two hours after the noon hour, and is further corroborated by his wife as to the state of his health—that is, that it was good before he ate the sardines. He testified that when he ate the sardines they smelled and tasted as most any other sardines; that all sardines smelled bad to him, but that when he went to eating them he ate them all. He testified that they smelled bad when he vomited them.

Dr. D. K. Sauls visited the plaintiff about 10:00 o'clock A. M. on January 8th, about two hours before the plaintiff left the hospital. Dr. Sauls had been called the evening before by the foreman of the construction company to visit plaintiff, but he did not make the visit until the next day. The Doctor testified that plaintiff told him he felt all right and wanted to go home. He further testified that he received information that plaintiff was placed in the hospital on account of food poisoning, or rather, he got that impression, but he further testified that auto-intoxication is the result of food poisoning, although the food is pure, but the food disagrees with the system of the person taking it; that auto-intoxication is a gastric condition, and if the party suffering therefrom has an enlarged liver or an enlarged spleen, pure food may cause auto-intoxication when the liver or spleen is enlarged. Auto-intoxication will cause cramps and vomiting, but will not cause diarrhea. He further testified that if a person's stomach is disordered, overeating will cause vomiting or cramps. Dr. C. B. Croswell was the interne at the Memphis General Hospital when the plaintiff was received, but he testified that he had forgotton all about plaintiff coming to the hospital and did not recall any of the facts surrounding plaintiff having been a patient at said hospital. It seems that this witness was shown a chart from which he testified that the chart showed that the plaintiff was in the hospital on January 7th and 8th, 1926. The chart further showed that from the information obtained from the patient at the time, he was suffering from food poisoning, and this was so designated upon the chart.

It was admitted that the cans of sardines which plaintiff alleged caused his injuries were not caught or packed by the defendants; that the sardines were received by the defendants through an intermediate broker in sealed cans and that the contents of the cans are not capable of inspection until opened. These were the facts that were submitted to the court.

We will first dispose of the question of negligence;

"In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish by a preponderance of the testimony, three propositions:

"(1)   A duty which the defendant owes him.

"(2)   A negligent breach of that duty.

"(3)   Injuries received thereby, resulting proximately from the breach of that duty.

"If he aver that the duty which the defendant owes him arises out of a particular relationship, or that the negligence constituting its breach consists of a particular act, omission, or thing, he must prove his case substantially as averred. This may be done, either by direct testimony of witnesses who know the facts, or by direct proof of indirect, but correlated, facts, from which the duty owing him, the injury done him, the negligence of defendant, and its proximate causal connection with the injury may be reasonably inferred. When such method of establishing liability is resorted to, negligence is never inferred from the mere fact of the injury; but the act which produced it, and the defendant's negligence, and the injury must all be shown, and the nexus between them must appear in the relationship of cause and effect. This indirect method of arriving at the negligence of defendant is generally expressed by the maxim 'res ipsa loquitur.' Literally translated, it means 'the thing speaks for itself,' and is merely a short way of saying that the circumstances attendant upon the accident are themselves of such character as to justify a jury in inferring negligence as the cause of the injury. It in nowise modifies the general doctrine that negligence will not be presumed.

"The mere fact of an injury never raises a presumption of negligence. Benedict v. Potts, 88 Md., 52, 40 Atl., 1067, 41 L. R. A., 478; Chicago Union Traction Co. v. Giese, 229 Ill. 263, 82 N. E., 232; Snyder v. Wheeling Electric Co., 43 W. Va., 661, 28 S. E., 733, 39 L. R. A., 499, 64 Am. St. Rep., 922.

"The general meaning of the maxim is well expressed by the supreme court of Illinois in Chicago Union Traction Company v. Giese, supra, as follows:

" 'When a thing which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care.'

"This rule finds its most common application in cases where one in passing along the street is hurt by a barrel falling from the door above, or by a brick falling from the wall or scaffold, or by a falling shutter or wall, or the like, the mere occurrences in themselves import negligence.

"In Snyder v. Wheeling Electric Co., 43 W. Va., 668, 28 S. E., 735, 39 L. R. A., 499, 64 Am. St. Rep., 922, supra, it is said that:

. " 'Where things of great danger are used in public highways where multitudes constantly and lawfully pass, their very nature requires the highest degree of care; and if one is killed by their being out of place or defective, why may we not logically and fairly assume negligence, unless other plausible explanation appears?'

"The limitations upon this doctrine are well defined and well understood, and are fully illustrated and fully expressed by this court in Railroad v. Lindamood, 111 Tenn., 457, 78 S. W., 99, where the court quoted the following from the Supreme Court of California with approval:

" 'Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer arbitrarily and without evidence that there was negligence. When a fact is established, some other fact may be justly inferred therefrom; but when a plaintiff instead of presenting a fact or facts from which the negligence of the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. The inference cannot be drawn from a presumption, but must be founded upon some fact legally established.' " DeGlopper v. Railway & Light Co., 123 Tenn., 642, 134 S. W., 609.

The doctrine of res ipsa loquitur does not apply in the instant case. Inferences can never be drawn from mere presumptions, though they may be drawn from well established facts, and such evidence, though by an expert witness is incompetent. Railroad v. Lindamood, 111 Tenn., 457, 78 S. W., 99.

In 11 R. C. L., p. 118, sec. 25, it is said:

"The proprietor of a hotel, restaurant or lunch room, or eating place, is bound to see that the food served by him is of the class which is generally accepted as fit for ordinary human consumption, and he must use in the preparation of his food that degree of care which the law exacts of those who follow his occupation for a livihood. The law requires that, in the selection and cooking of food for his customers, he shall exercise the same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption would be expected to exercise in the selection and preparation of food for his own private table. In such cases there appears to be no implied warranty."

In 14 R. C. L., p. 510, sec. 15, under the subject of innkeepers, it is said:

"It is well settled that innkeepers, proprietors of restaurants, lunchrooms, or boarding houses, railroad companies operating dining cars, and all other persons who undertake to furnish the public with food are bound to use due care to see that such food is fit for human consumption, and can be partaken of without causing sickness or en-

dangering human life because of its unwholesome and deleterious condition; and for any negligence in this particular which proximately results in injury to a patron, they will be responsible. It is generally held that the liability of the person furnishing the unwholesome food is based on his failure to exercise reasonable or ordinary care, and is not that of an insurer; and it has been expressly held in some cases that there is no implied warranty of the quality of food furnished by a restaurant keeper to a customer for immediate consumption, since the transaction does not constitute a sale, but a rendition of service.''

The decided weight of authority, though there are some cases to the contrary, is to the effect, that, in the absence of statute, one serving food to be immediately consumed on the premises is neither an insurer of the fitness and wholesomeness of the food served, nor liable upon an implied warranty thereof. Valeri v. Pullman Company, 218 Fed. 519; Travue v. Louisville & N. R. R. Co., 183 Ala., 415, 62 So., 851; Loucks v. Morley (Cal. App.), 179 Pac., 529; Merrill v. Hodson, 88 Conn., 314, L. R. A., 1915B, 481, 91 Atl., 533; Sheffer v. Willoughby, 163 Ill., 518, 34 L. R. A., 464; Bigelow v. Maine C. R. Co., 110 Me., 105, 42 L. R. A. (N. S.), 627, 85 Atl., 396, cited with approval in Trafton v. Davis, 110 Me., 318, 86 Atl., 179; Malone v. Jones, 91 Kan., 815, 139 Pac., 387, L. R. A. 1915A, 328; Bark v. Dixon, 115 Minn., 172, 131 N. W., 1078.

In Travis v. Louisville & N. R. Co., supra, in holding that there is no implied warranty of the fitness of oysters served on a railroad dining car for immediate consumption, it was said that a restaurant keeper merely warrants that the food which he serves in his restaurant belongs to that class of food which is generally accepted to be fit for ordinary human consumption, and that he had used, in the selection and preparation of his food, that degree of care which the law exacts of those who follow his occupation for a livihood, and that the law requires that, in the selection of food for his restaurant, and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table.

And in Bigelow v. Maine C. R. Co., supra, like reasoning was applied to canned asparagus served on a railroad dining car.

And in Valerie v. Pullman Company, supra, the Federal court, following what was said to be the common-law rule, held that the proprietor of a buffet car was neither an insurer of the fitness of the food sold, nor liable upon an implied warranty.

In 26 C. J., 786, it is said:

''A keeper of a public eating place, engaged in the business of serving food to customers, is bound to use due care and see that the

food served to his customers, at his place of business, is fit for human consumption and may be eaten without its causing injury, and for an injury caused by negligence in failing to observe this duty to his patrons such keeper is liable.''

As before stated, according to some authorities, a keeper of a public eating place is liable upon an implied warranty, irrespective of the negligence, for an injury caused by food served by him. Friend v. Childs Dining Hall Co., 231 Mass., 65, 120 N. E., 407; Race v. Krum, 22 N. Y., 410, 118 N. E., 853, L. R. A., 1918F, 1172; Barrington v. Hotel Astor, 171 N. Y. S., 840.

In Boyd v. Coca Cola Bottling Works, 132 Tenn., 23, 177 S. W., p. 80, and Crigger v. Coca Cola Bottling Company, 132 Tenn., 545, 179 S. W., 155, where a manufacturer was sued for injury sustained· by plaintiff from drinking coca cola which had been manufactured and put into a sealed bottle by such manufacturer, and which had been rendered unwholesome and unfit for human consumption by foreign and deleterious substances contained in the bottle, it was held that such manufacturer was liable only for the failure to exercise care to see that nothing unwholesome or injurious was contained in the bottle or package.

In the case of Crocker v. Baltimore Dairy Lunch Co., 214 Mass., 177, 100 N. E., 1078, Ann. Cas., 1914B, 844, it was held that in an action for injuries from poisoning caused by food purchased at the defendant's restaurant a finding for the plaintiff is not warranted by evidence that the plaintiff bought and ate the defendant's food and became sick from what the jury might find to be ptomaine poisoning, without any evidence that the defendant was negligent in purchasing its food supplies.   The Crocker case, supra, is well annotated, and numerous cases are cited in the note by the editor of Annotated Cases, supporting the doctrine that the proprietor of a restaurant or lunch room is not liable as an insurer against sickness or injuries caused by eating unwholesome food at his restaurant.

Counsel for plaintiff relies upon the case of Thompson v. Smith, 8 Tenn., C. C. A., 95. In that case Miss Smith recovered a judgment against Thompson's restaurant of Memphis, Tennessee, because the restaurant keeper served a decayed half grape fruit which had been so arranged in a bowl that the decayed spots were hidden. As soon as the plaintiff discovered the unwholesome or injurious grape fruit she called the manager's attention to it and another grape fruit was ordered; that the plaintiff was informed that all the grape fruit on hand was like the one that had been served to her. She did not eat any more, and had eaten very little of the grape fruit in the first instance, but shortly thereafter she became ill. Plaintiff recovered a judgment in the lower court, which was affirmed by the

Court of Civil Appeals, and the opinion of Mr. Justice Moore of said court was published in the volume heretofore cited. The Court of Civil Appeals distinguished the Thompson case, supra, from the rule announced in the case of Boyd v. Bottling Works, and Crigger v. Coca Cola Bottling Works, supra, and said: ''We think it is true that a different rule obtains in case where the manufacturer is sued and in such cases it must be shown that he was guilty of negligence in either manufacturing or packing or in placing his manufactured goods upon the market. If he knows they have substances in them that are injurious to the health of those who ultimately use, or if by the exercise of reasonable and ordinary care he could discover such substances in them before he placed them upon the market, then the manufacturer would only be liable for such negligence to the consumer of his goods. There is no implied warranty between the manufacturer of goods and the ultimate consumer, that the goods made and sold by him are reasonably fit and suitable for the purpose for which they are intended. This, for one reason, that there is no privity of contract between him and the consumer.'' The Court of Civil Appeals held that where a dealer in foods sells them for immediate consumption to a customer, ''we think the law wisely holds that there is an implied contract between them that the food thus sold to be thus consumed is wholesome and fit and suitable for human consumption,'' and in support of this doctrine the court cited Brown v. Marshall, 47 Mich., 567, opinion by Judge Cooley.

In the case of Antonio Petrucelli v. Elmore Green, Davidson Law, MS opinion by Justice Hall, delivered at Nashville in December, 1925, the Supreme Court in the Petrucelli case held contrary to the rule announced in the case of Thompson v. Smith, reported in 8 C. C. A., supra, and said:

''The holding of the Court of Civil Appeals in the case of Thompson v. Smith, was never passed upon and approved by the Supreme Court. We think it is out of line with the decided weight of authority, and placed too great a responsibility upon one serving food to be immediately consumed by his patrons. Such persons are only required to exercise due care in serving such food.''

In the case of Thompson v. Smith, supra, it appears that there was no petition for certiorari from the Court of Civil Appeals.

We cannot find any act of negligence upon the part of the defendant, proven by the plaintiff. It is a known fact that men sometimes become ill suddenly after eating pure food. A man might eat new Irish potatoes that are pure and become ill shortly thereafter; he might eat fresh strawberries and shortly thereafter become suddenly and dangerously sick. The sardines appeared to be all right, as good as any sardines the plaintiff had been accustomed

to eating. It seems that he knew as much about the sardines as the clerk or salesman in defendant's store. The salesman advised plaintiff to take the sardines out of the tins and place them in a wooden tray. This was a proper precaution, and we are of opinion that there is no evidence tending to establish any negligent act upon the part of the defendant in the sale of the sardines.

We next come to the proposition of the alleged implied warranty:

The supreme court in the Betrucelli case, supra, decided that one serving food to be immediately consumed on the premises is not an insurer of the fitness and wholesomeness of the food served, nor liable upon an implied warranty thereof, citing numerous authorities in support of this proposition, and which authorities have heretofore been set forth in this opinion.

Counsel for plaintiff insists that the uniform sales act controls, and that the supreme court did not consider the uniform sales act, being chapter 118 of the Acts of 1919, when the opinion was announced in the Petrucelli case. It is insisted that by section 15 of chapter 118 of the Acts of 1919, defendant is liable. Said section is as follows:

"Sec. 15. Be it further enacted,

"That: (Implied Warranties of Quality)

"Subject to the provisions of the Act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

" (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose.

" (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

Subsection 3 of said section, which is not quoted in brief of counsel provides that "if the buyer has examined the goods there is no implied warranty as respects defects which such examination ought to have revealed."

In the instant case the plaintiff was as well acquainted with the sardines as was the clerk who waited on him. He purchased the exact article that he wanted. The plaintiff did not rely upon the seller's skill or judgment. The authorities make a distinction between an article sold where the buyer relies upon the skill and information of the seller and not upon the buyer's selection;—for instance, if a customer or a buyer goes into a market and calls for a

dressed fowl and asks the seller or dealer to select a nice wholesome fowl and the seller or market man makes the selection and it develops that the fowl is unwholesome, there would be a breach of warranty, but where the buyer selects the fowl from a table upon which there are a number of dressed fowls, and he makes his own selection, and selects one that is unsound, the seller is not liable. Farre'l v. Manhattan Market Co. (Mass.), 84 N. E., 481, 15 L. R. A. (N. S.), 884.

In the case of Goad v. Johnston, 6 Heisk., page 340, our supreme court, speaking through Mr. Chief Justice Nicholson, said:

"The rule that the seller is responsible for defects unknown to him, applies only to sales of provisions for consumption, and rests on statutory enactments, and not on the doctrine of implied warranty."

In that case Johnson purchased some beef cattle from Goad. Johnson saw part of the cattle and Goad said he had some as good as the ones that Johnson inspected. Goad was to deliver the cattle the next day, some four or five miles distant from his home. Goad delivered fourteen head the next day at the place designated, probably twice as many as Johnson had inspected. Johnson paid part of the consideration and gave a due bill for the balance due. Goad brought suit upon the due bill and Johnson defended on the ground that soon after purchasing the cattle and before he could get them to his home, two of them died and others became seriously sick from a disease known as milk sickness; that this milk sickness had prevailed among the cattle in Goad's neighborhood. It was Johnson's insistence that the disease in its incipient stage existed in the cattle when they were purchased. The Supreme Court in passing upon the case, said:

"If there is no express warranty by the seller or fraud upon his part, the buyer who examines the article himself must abide by all losses arising from latent defects equally unknown to both parties" citing Kent, Vol. 2, p. 478, while Blackstone, in Vol. 3, p. 166, says that:

"In contracts for provisions it is always implied that they are wholesome, and that if they be not, an action on the case for deceit lies against the vendor." But, as remarked by Mr. Benjamin on Sales, page 493, "this proposition from Blackstone clearly assumes knowledge of the unwholesomeness on the part of the vendor, for that knowledge is an essential element in the action of deceit." After a full examination of the cases, Mr. Benjamin says: "It results clearly from these authorities that the responsibility of a victualler, vintor, brewer, butcher or cook for selling unwholesome food does not arise out of any contract or implied warranty, but is a responsibility imposed by statute that they shall make good any damage caused by their sale of unwholesome food."

The Uniform Sales Law, chapter 118, Acts 1919, is but declaratory of the common law.

The case of Crigger v. Coca Cola Bottling Works, supra, was instituted by plaintiff, alleging that the manufacturer was negligent in bottling a liquid for drinking purposes, and in the bottle there was a foreign substance which caused the plaintiff, upon drinking the liquid, to become violently ill. There were two grounds alleged as basis for recovery—negligence and an implied warranty. Mr. Justice Fancher, in delivering the opinion of the supreme court held there was no liability on the part of the defendant, saying:

"1. That one who prepares and puts on the market, in bottles, or sealed packages, foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to anyone injured for a failure to properly safeguard and perform that duty.

"2. This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high degree of care to furnish pure foods, beverages, and medicines, we believe that Judge Cooley, as expressed in Brown v. Marshall, supra, that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission."

The line of cases that support a verdict for damages under the first paragraph, were manufacturers of medicine, or articles intrinsically dangerous, and on the ground of public policy druggists are held liable from incompetency or negligence in selling to one person wrong-poisonous medicine whereby third persons are injured.

The case of Brown v. Marshall, 47 Michigan, p. 574, opinion by Judge Cooley, while holding that a high degree of care is required of a druggist in the preparation of drugs, that actual negligence cannot be dispensed with as an element of liability when a mistake has occurred; that the druggist cannot escape on the ground of accidental or innocent mistake; so that it is to be seen that even in those cases holding druggist liable an element of negligence is presented and the recovery is based upon negligence and not upon the implied warranty.

In the instant case there was no breach of implied warranty to hold the defendant liable. Under the facts as presented here, it would necessarily make the defendant become an insurer, insuring the buyer that the goods sold and consumed by the plaintiff would not make the plaintiff ill. The weight of authority does not sustain such a contention.

It results that we find no error in the judgment of the lower court. Under the undisputed proof, the defendant owed no duty to the

plaintiff which was breached whereby the plaintiff could sustain a cause of action, or have the defendant respond in damages to the plaintiff.

All the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. The defendant will recover of the plaintiff the cost of the cause, including cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.