## READ PHOSPHATE COMPANY v. C. H. VICKERS, Admr. of JAMES SOLON VICKERS, dec'd.

Middle Section. January 20, 1930.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

Samuel N. Harwood and Bell & Hibbitts, of Nashville, for plaintiff in error, Phosphate Co.

E. J. Walsh and Charles L. Cornelius, of Nashville, for defendant in error, Vickers.

CROWNOVER, J. This action was brought by James Solon Vickers, a minor, by his next friend, to recover damages for personal injuries, acid burns, caused by the explosion of a metal drum filled with sulphuric acid, which acid was sold by the Read Phosphate Company to the Tennesseee Enamel Manufacturing Company, the employer of James Solon Vickers; but before this case was tried the plaintiff was killed in an automobile acc'dent, and the suit was revived in the name of his father, C. H. Vickers, administrator of the deceased.

The declaration contained three counts, and averred that the defendant sold sulphuric acid to the Tennessee Enamel Manufacturing Company and directed the use of an unsafe metal container: that when acid was placed therein a chemical reaction was caused and

gas generated, which when confined would naturally result in an explosion; that the defendant poured hot acid into the metal container, thereby accelerating the formation of gas, and tightly closed the same, creating a condition that was potentially dangerous to life and health and resulted in an explosion; that defendant gave no warning to the employees of the Enamel Manufacturing Company or to those people who were likely to come in contact with and be injured by an explosion of the metal tank filled with acid; that the defendant as a manufacturer of sulphuric acid knew or should have known of its characteristics. and that the plaintiff had no knowledge of its dangerous qualities and that said explosion caused the injuries sued for.

The defendant pleaded the general issue of not guilty, and also filed a special plea in bar that the plaintiff had brought another action against the same defendant for damages for the same injuries, which was tried by the court and a jury and at the conclusion of the evidence the defendant moved for peremptory instructions, and the court announced that he would have to sustain the motion, whereupon the plaintiff was permitted to take a nonsuit and voluntarily dismissed his action, and instituted the present action within twelve months thereafter, but more than twelve months after this cause of action had accrued.

The plaintiff filed a replication to said plea, setting out, first, the unexpected absence of two essential witnesses, necessitating the taking of a nonsuit: second. that this. action was brought within twelve months of the taking of the nonsuit; and third, that plaintiff was a minor when both actions were brought. Issue was taken on the replication. proof heard and the plea overruled by the court. Thereupon, the case was tried by the judge and the jury.

At the conclusion of all the evidence the defendant moved the court for the exclusion of the evidence of two witnesses and for peremptory instructions. The court overruled the motion, and the jury returned a verdict of $4500 in favor of the plaintiff below.

The defendant's motion for a new trial was overruled, and it has appealed in error to this court and has assigned thirty-six errors, which when summarized raise thirteen propositions.

The facts necessary to be stated are that the Read Phosphate Company is a corporation engaged in the manufacture of sulphuric acid and phosphate fertilizer. The sulphuric acid is manufactured to be used in making fertilizer, but some of the sulphuric acid is sold.

The Tennessee Enamel Manufacturing Company is a corporation engaged in manufacturing enameled products. It uses some sulphuric acid in its process and purchased some of the acid from the Read Phosphate Company, whenever it needed it. about once every ten days. At first it sent a glass carboy or large bottle for the acid. The bottles were placed inside of wooden crates packed with straw. But they

were often broken and the acid was lost. There were two causes for the carboys breaking. One was that in filling the bottle the acid would spill and run down on the outside of the bottle into the crate and would form a chemical combination with the nails holding the bottom of the crate and disintegrate the nails, allowing the bottom of the crate to come apart and the glass bottle to fall out and break. Another cause of the breaking of the bottle was pouring hot acid into the glass bottle. On account of this trouble the Read Phosphate Company instructed the Enamel Manufacturing Company to send steel drums for the acid. The Enamel Manufacturing Company procured one in which the acid was purchased from the Phosphate Company and this drum was used for about sixty days preceding the accident that resulted in this suit.

About June 5, 1924, the Enamel Manufacturing Company, sent one of its employees, Howard Loring, to the Read Phosphate Company with a steel drum for sulphuric acid. This drum's capacity was about fifty gallons. This was the first trip that Loring had made with the steel drum for acid. But he had frequently used the glass carboys prior to the time the Enamel Company was instructed to use steel drums. He knew nothing of the chemical reaction of sulphuric acid on steel or that gas would be generated which would cause an explosion, or that high temperature would accelerate the formation of gas. When he applied at the plant of the Read Phosphate Company for the acid, he was sent with a colored employee to the acid chamber where the employee made a siphon of an iron pipe and drew the acid out of a tank into the drum. The colored employee directed Loring to use a sack for the purpose of holding the pipe, telling him that it would be too hot otherwise. When the drum was filled up with hot sulphuric acid to within a few inches from the top, the caps were screwed on and it was moved through the building to the loading platform. There, one Mr. Gregory, the superintendent of the acid plant and who had charge of the manufacture of the acid for the Read Phosphate Company, sent the employee for a Stillson wrench and unscrewed one of the caps of the drum and took it out. He then told Loring to remove this cap and leave it off when he reached the plant, if he so desired. No other notice or warning was given of the inherently dangerous qualities of sulphuric acid confined in a steel drum.

The cap was again screwed on and the drum closed under the direction of Gregory and it was loaded on to the truck, which was driven directly to the Enamel Manufacturing Company's plant, which consumed about ten minutes' time. When Loring reached the plant, he called to the plaintiff's intestate and another boy to help unload the drum. Young Vickers was a country boy about nineteen years of age and had left the farm and secured employment with the Enamel Manufacturing Company about six weeks prior to the ac-

cident. His duties were to clean up around the plant, help unload and do other things as directed.

The drum was still so hot that it could not be touched with the bare hands and the boys had to use paper and straw as protection in handling the drum. They rolled it out on the platform. Vickers and a colored boy placed it on a conveyor or truck, moved it into the pickling room where it was to be used. It was lying on its side on the conveyor. The manager of the pickling room instructed them to turn it around so that the spigot would be on the side toward the pickling vats. They turned the conveyor around, placing the drum as directed for use, and as Vickers leaned over to release the catch in order to lower the conveyor to the floor the drum exploded, throwing hot acid into his face, eyes and ears and over his body, causing painful and permanent injuries, burns and disfiguration, for which he brought this suit.

The record is large and the many assignments of error have been discussed at length by counsel, all of which has received our careful consideration, but we are of the opinion that none of the assignments of error is well taken and that all of the determinative propositions raised in this case were raised and disposed of in an able opinion by the Supreme Court of Massachusetts in the case of Guinan v. Famous Players-Lasky Corporation, 167 N. E., 235. However, we will attempt to summarize the assignments of error and discuss the determinative propositions.

The first proposition, that the court erred in not directing a verdict for the defendant because there was no evidence to sustain a verdict. is not well taken.

We are of the opinion that there was sufficient evidence for the case to be submitted to the jury on the proposition that the reaction of hot sulphuric acid on the steel drum caused the generation of gas which caused the explosion, and that the defendant gave no warning of the dangerous qualities of the acid under such conditions to those who, it should have foreseen, would come in contact with it.

There was evidence that concentrated sulphuric acid, of the strength of sixty-two degrees Baume, and of low temperature, 110 degrees Fahrenheit, will not react on a steel container or on iron tank cars to any appreciable extent; but there is also evidence in the record that sulphuric acid weaker than sixty-two degrees Baume will react on steel or iron containers, and there is evidence tending to show that sulphuric acid of the strength of sixty-two degrees Baume at a higher temperature than 110 degrees Fahrenheit will set up a chemical reaction and generate gas when placed in a steel or iron container; that if sulphuric acid is raised in temperature it increases the reaction, and gas is generated three times as quickly for every ten degrees the temperature is raised; that the gas will produce pressure, and when confined in a closed drum it will cause

an explosion; that the natural motion or agitation caused by the moving of a truck tends to increase the generation of gas.

There is considerable proof in the record that this particular shipment of acid was of high temperature. When it was being siphoned out of the tank into the drum, Loring had to hold the pipe with a sack in addition to his gloves on account of the heat. The boys, when rolling the drum from the truck on to the platform, had to use paper and straw in order to handle the drum on account of the heat, but its exact temperature is not shown.

It appears that the acid was usually hot when taken out of the tanks at the plant of the Read Phosphate Company, and that this caused the breaking of many glass carboys, and for this reason the Phosphate Company requested the Enamel Company to furnish and use steel drums.

It is further shown that the acid is extremely hot when it comes out of the towers where it is generated and that it has to be cooled by means of water jackets.

The defendant's proof was that this particular acid was 110 degrees Fahrenheit in temperature as taken by the colored employee at the time it was siphoned, but Loring denied that the colored employee took the temperature at all and said that the acid was so hot that the siphon and the drum could not be touched with the bare hands.

It is admitted that the defendant gave no notice of the intrinsically dangerous character of this acid or any warning other than the advice given to Loring to remove the cap when he reached the plant and to leave it off if he desired.

There was material evidence that this acid was hot and that the reaction of hot sulphuric acid on the steel drum generated gas which caused the explosion resulting in the injuries sued for, and that the defendant requested the use of the steel drum and negligently poured the hot acid into the steel container, which was then tightly closed, and delivered the same to Loring without notice or warning of the danger that would result therefrom.

Of course it must be conceded that the burden of proof was primarily on the plaintiff to establish the negligence charged, and it was not enough to show an accident and an injury. The mere fact of an injury never raises a presumption of negligence. Bell v. Bowers Stores, 3 Tenn. App., 590; Patton v. R. R., 179 U. S., 658, 45 L. Ed., 361; Waters-Pierce Oil Co. v. Deselms, 212 U. S., 158, 53 L. Ed., 453.

It is further insisted that the court erred in refusing to direct a verdict for the defendant because the proof did not show that the defendant had any knowledge that it was dangerous to put sulphuric acid in a metal container, hence it is insisted that the defendant was not guilty of negligence. We are of the opinion that this propo-

154

sition is not well taken, because there was enough material evidence to show that the defendant had knowledge of the nature, elements and qualities of sulphuric acid.

It has been held in many states that recovery may be had against the manufacturer of an inherently dangerous article without proof of knowledge on his part of the danger, as he is charged with notice of the nature and qualities of the article which he makes. 45 C. J., 888, sec. 327. So far as we are able to learn, we have no Tennessee case directly on this proposition, but it has been held in several cases that the manufacturer must have actual knowledge of defects in the article manufactured, and the courts have refused to hold that the manufacturer is chargeable with constructive notice of the defects or with knowledge that he could have obtained by the exercise of ordinary care. See Burkett v. Mfg. Co., 126 Tenn., 467, 150 S. W., 421; Fireworks Co. v. Wilson, 5 Higgins, 388.

But the authorities make a difference with respect to knowledge on the part of the manufacturer and hold that he is charged with notice of the nature and qualities of the article which he manufactures and cannot excuse himself on the ground of want of knowledge of its dangerous qualities. See Peaslee-Gaulbert Co. v. McMath, 148 Ky., 265, 146 S. W., 770, 39 L. R. A. (N. S.), 465, Ann. Cas. 1913E, 392; Thornhill v. Carpenter-Morton Co., 220 Mass., 593, 108 N. E., 474. The Peaslee-Gaulbert Co. v. McMath case was cited with approval on other propositions by the two Tennessee cases above cited.

However, there was ample evidence that the sulphuric acid, sixty-two degrees Baume, put into a steel drum while hot, would generate gas and explode, was inherently dangerous, and that the defendant's agents and employees had knowledge of its qualities. It was admitted that the superintendent in charge of the manufacture of defendant's sulphuric acid, and who sold this steel drum of sulphuric acid to the Enamel Company, had studied chemistry and had had many years of experience in the manufacture of acids, and had kept up with the authorities on the manufacturing and handling of acids. He admitted that if acid of sixty-two degrees Baume was put into a steel drum, while hot, it would explode, but he and the other employees insisted that this acid was only 110 degrees Fahrenheit, whereas Loring, to whom the acid was delivered, positively denied that the acid was tested by the colored employee. Hence there was enough evidence to carry the case to the jury on these propositions, and the jury having passed on them adversely to the defendant, the verdict is conclusive.

The seller of an explosive substance, knowing its nature, must give the purchaser notice of its dangerous character or he will be liable for injuries resulting to innocent persons who are not themselves at fault, irrespective of privity of contract. 25 C. J., 189-191, sec. 15; 45 C. J., 888, sec. 327; 12 Am. & Eng. Ency. of Law (2 Ed.),

508; Burkett v. Mfg. Co., supra; Guinan v. Famous Players-Lasky Corporation, supra; Wellington v. Oil Co., 104 Mass., 64; Hallenback v. Chemical Co., 189 N. Y. S., 334, 197 App. Div., 855; Clarke v. Army & Navy Stores (1903), 1 K. B., 155; Standard Oil Co. v. Parrish, 145 Fed., 829; Waters-Pierce Oil Co. v. Deselms, 212 U. S., 159, 53 L. Ed., 453; Peaslee-Gaulbert Co. v. McMath, supra.

Hence, all the assignments of error which go to the proposition that there is no liability because there was no contractual relation or privity of contract between the plaintiff and defendant and that the defendant owed the intestate no duty, are not well taken and must be overruled. See Guinan v. Famous Players-Lasky Corporation, supra.

It is further insisted that the court should have directed a verdict because the defendant had a right to presume that the Enamel Company and its employees knew the nature and properties of sulphuric acid, as it had been purchasing acid for some time and they were therefore presumed to know its dangerous qualities, and therefore no notice or warning was necessary. Citing, Gibson v. Torbet, 115 Iowa, 163, 91 A. S. R., 147; Seldon v. Hooper (Kan.), 224 Pac., 34-38; 9 R. C. L., 706, sec. 13; 19 C. J., 781, sec. 52.

It was for the jury to determine whether, under all the circumstances, Loring and the decedent had or ought to have had such knowledge. Sulphuric acid put into a metal container when cold under ordinary circumstances is not dangerous, but if hot it will generate gas and will explode, and is dangerous, hence it was the duty of the defendant to inform Loring and the purchaser of this fact and to warn them of any danger incident thereto. Clarke v. Army & Navy Stores, supra; 45 C. J., 847.

The purchaser and its employees did not know the specific gravity or the degree of heat of the sulphuric acid delivered unless informed of it, and they had a right to presume that the acid would be delivered to them in a safe condition. The degree of danger was commensurate with the degree of heat. The degree of care must be commensurate with the dangerous character of the article. See 45 C. J., 847, sec. 264; Fredericks v. Atlantic Refining Co., 282 Pa. St., 8, 38 A. L. R., 666.

The employee Loring was ignorant of the properties of sulphuric acid and knew nothing about its reaction when put into a steel drum while hot. He had hauled many bottles or carboys of sulphuric acid and had seen it put into the carboys while hot without any reaction except that it broke the bottles, but this was the first time that he had attempted to haul sulphuric acid when put into a steel drum; hence, it was for the jury to determine whether under all the circumstances the Enamel Company and its employees had or ought to have had such knowledge.

" Whether a brush manufacturer, using scrap motion picture film to make cement for three years before injury to street car passengers by explosion of such film, taken on car by his employee, to whom delivered by motion picture distributor's shipper, knew or should have known of inflammable qualities thereof, so as to warrant shipper's assumption that such manufacturer instructed his servants, thus obviating necessity of shipper notifying such employee of danger, held for jury." Guman v. Famous Players-Lasky Corporation, supra.

It is insisted that the court should have directed a verdict "because this suit is predicated upon circumstantial evidence consisting exclusively of conjectures, inferences and presumptions, and it is sought by the plaintiff to pile inference upon inference, or inference upon conjecture or presumption, and thereby reach a conclusion as to the cause of the accident;" and several cases are cited, which hold that when a conclusion can be reached only by piling inference upon inference or inference upon presumption the premises are uncertain and the conclusion is not reliable. But in this case the inference is reasonably deducible from the facts proven. See 4 C. J., 853; Woodmen of the World v. Mankin, 5 Tenn. App., 188, 198; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170.

"The jury may find a fact from circumstantial evidence and the fact thus found may be used as the basis of a presumption in passing upon other evidence, without contravening the rule that an inference cannot be based upon an inference." Adament Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170, 178.

Inferential evidence is sufficient if not opposed to direct and positive testimony to the contrary. Swaggerty v. Stokely, 1 Swan, 38; Bank v. Evans, 95 Tenn., 702, 34 S. W., 2.

"But the proof may be circumstantial and the manner in which the injury occurred may, in the absence of positive proof, be established by reasonable inference from the physical facts shown." 45 C. J., 1268-9.

We are of the opinion that this contention is not well made, because the proof shows that this steel drum had been used for sixty days to convey the sulphuric acid to the Enamel Company's plant and that the caps were screwed on and it contained no foreign substance, that the sulphuric acid was put into the drum while hot and it was driven directly to the Enamel Company's plant within a short time without being tampered with, and the proof of expert witnesses shows that if hot sulphuric acid is placed in a steel container it will generate gas and cause an explosion, therefore there is no inference upon an inference or inference upon a presumption indulged in this case. It results that this assignment must be overruled.

The appellants insist that "the injuries were due to an independent, intervening cause or human agency, in this, the sulphuric acid was delivered to the Tennessee Enamel Manufacturing Company through its truck driver and agent, Howard Loring, who requested the deceased to unload same, and another agent, Cecil Marcellus, directed him to change its position, when the explosion occurred." There is no proof in the record to show that this accident was caused by any acts that intervened between the filling and tightly closing of the drum by the Read Phosphate Company's agents and the accident. The proof shows that the drum was hauled a distance of about one mile, which consumed about ten minutes. It was unloaded and moved to the pickling room where it was turned around, and the explosion occurred. These were acts that should have been anticipated by the Phosphate Company, and only accelerated the happening of what had already been arranged for by the Read Phosphate Company.

"The intervening act or event must be sufficient itself to stand as the cause of the injury, and be one but for which the injury would not have occurred. If the new cause merely accelerates an original cause which was sufficient to produce the injury, the first cause will still be the proximate cause, as where a fire negligently started is spread by the wind. The intervening act or agency must have been one which could not reasonably have been anticipated by the primary wrongdoer, and must have superseded the original act or been itself responsible for the injury." 45 C. J., 930: Sprankle v. Mathis, 4 Higgins, 522.

But the defendant contends that, even if there was evidence from which a jury would be warranted in finding negligence on the part of the defendant, such negligence was not the proximate cause of the plaintiff's injury.

"An obligation rests upon one who delivers an article, which he knows, or ought to know, to be peculiarly dangerous, to give notice of its character or bear the natural consequences of his failure to do so. Leavitt v. Fiberloid Co., 196 Mass., 440, 444, 82 N. E., 682, 15 L. R. A. (N. S.), 855. The injury must be the direct result of the wrongful act. By direct and proximate cause is not meant that the cause of agency which is nearest in time or place to the result is necessarily to be chosen. Lynn Gas & Elec. Co. v. Meriden Fire Ins. Co., 158 Mass., 570, 20 L. R. A., 297. It will not be too remote if, according to human experience, the defendant ought to have foreseen that the intervening act was likely to happen. . . .

"The jury were warranted in finding that if Doherty delivered the scrap film to Shirley and allowed him to take away this highly inflammable substance in a burlap bag injurious consequences might reasonably be expected to follow and that

such negligent conduct on the part of Doherty was the proximate cause of the plaintiff's injuries. There is no intervening cause that would break the chain of causation. All that appears is that the act of a third person intervened and contributed a condition necessary to the injurious effect of the original negligence, which brings the cause within the rule stated in Lane v. Atlantic Works, 111 Mass., 136, 140. There was evidence that when the film was subjected to heat it emitted gas that could ignite and, if confined, might explode. Upon this testimony the defendant should have foreseen that some such intervening act was likely to happen while the film was being transported in an unsuitable and improper container.'' Guinan v. Famous Players-Lasky Corporation, supra.

To the same effect are the cases of Deming v. Merchants' Cotton Press, etc., Co., 90 Tenn., 306, 17 S. W., 89; Fairbanks, Morse & Co. v. Gambill, 142 Tenn., 633, 222 S. W., 5; McBurgess v. Federal Life Ins. Co., 5 Tenn. App., 284; Grigsby v. Bratton, 128 Tenn., 597, 163 S. W., 804; Rosenbaum v. Shoffner, 98 Tenn., 630, 40 S. W., 1086.

The proximate cause of this accident was putting the hot sulphuric acid into the metal container and closing it up. There was no intervening contributing cause that should not have been reasonably anticipated by the defendant when it put the hot sulphuric acid into the metal container. It results that these contentions are not well made and must be overruled.

It was next insisted that the deceased was guilty of contributory negligence which should bar a recovery. The record shows that Vickers was a young, inexperienced, country boy, about nineteen years of age, who had come to the city from the farm about six weeks before the accident occurred and secured employment with the Tennessee Enamel Manufacturing Company. His duties were to clean up around the plant, help load and unload, and do whatever he was directed to do. Just prior to the accident he was instructed to help place the metal drum of acid in position for use in the pickling vats. He helped to move the drum of acid from the truck to the vats, placed it in position and leaned over it to release the latch so as to remove the conveyor, when the explosion occurred. There is no evidence of negligence in placing it in position. The evidence does not show that he knew the contents of the drum or knew any of the qualities or characteristics of sulphuric acid. There are three reasons why this contention is not good: first, he was not guilty of contributory negligence, the proof does not show that he was; second, under the circumstances it was a question for the jury and the jury has passed on it adversely to the defendant; third, where a servant is working under the immediate orders of a boss or foreman he has a right to rely upon the foreman's superior knowledge and judgment. See 9 Michie's Tenn. Ency. Dig., 46; 39 C. J.,

896, sec. 1116; Locke v. Interurban R. R. Co., 2 Hig., 1; Chat. Elec. Ry. Co. v. Lawson, 101 Tenn., 406, 47 S. W., 489. It results that this contention must be overruled.

It is next insisted that the court erred in admitting the testimony of two chemists as expert witnesses on the conjecture that commercial sulphuric acid will react, and that transporting a drum of acid and shaking would increase the degree of temperature and generate more gas which would cause the explosion. There is nothing in these contentions. Somewhat similar propositions were raised in the case of Guinan v. Famous Players-Lasky Corporation, supra, and that court held that testimony of expert witnesses, possessing peculiar skill and knowledge in chemical science, as to their opinions with respect to whether scrap motion picture film was liable to explode, held admissible in action for injuries caused by explosion thereof. The assignments of error on these propositions must be overruled.

It is next insisted that sulphuric acid is not inherently dangerous, citing the case of Means v. Southern California R. Co., 144 Cal., 473, 77 Pac., 1001, 1 Ann. Cas., 206.

In that case there was no question of the liability of the manufacturer. The defendant railroad was sued upon the theory that the defendant as the owner of a freight house owed the legal duty to one entering upon the premises to exercise reasonable care in seeing that the premises were safe. The court held that the plaintiff was not lawfully on the premises, and that therefore the alleged duty did not exist. The plaintiff was either a trespasser or a licensee. The court further held that there was no evidence in that case to show that the handling of sulphuric acid in iron tanks was improper. The decision for the defendant was based upon the ground that the plaintiff was not lawfully on the premises, and the statement in regard to handling acid was mere dictum. But in this case the proof shows that to place hot sulphuric acid in a metal container was dangerous and that it would explode if tightly closed up.

Whether a particular substance is an explosive is a question of fact for the jury. 11 R. C. L., 653, sec. 2; Guinan v. Famous Players-Lasky Corp., supra. It results that this contention must be overruled.

Several assignments of error were made on the charge of the court to the jury and on the court's refusal to charge special requests in accordance with complainant's various contentions hereinabove set out. We having held that the contentions hereinabove set out were not well made, it follows as a natural consequence that these assignments must be overruled.

It was insisted that the court erred in charging the jury that where material facts have been proven from which it is reasonable to infer

the existence of another material fact, it is proper for the jury to draw all natural or reasonable inferences from the proven fact, but not proper to base an inference on an inference. It was insisted that this charge was erroneous because the doctrine of res ipsa loquitur did not apply and the jury should not have been allowed to infer negligence from such presumption.

This contention is not well made, because the court did not charge the doctrine of res ipsa loquitur, and that doctrine has nothing to do with this case. If the defendant had desired more specific instructions on this proposition it should have made special requests on the subject, which it did not do. It results that this assignment of error must be overruled.

It is next contended that the court erred in charging the jury that it was the duty of defendant in handling sulphuric acid to acquaint itself with the dangerous character of the product when poured into a metal container, if dangerous, as contended by the plaintiff, especially warm or hot, if that increased the danger of an explosion, as insisted by the plaintiff. It was its duty to have such reasonable knowledge and to observe reasonable care in the business of manufacturing and handling sulphuric acid. It was insisted that this was error, because under the Tennessee cases the manufacturer is not liable except it be shown that he had actual knowledge of the defect or danger in the article manufactured and put upon the market for sale and he must be guilty of actual negligence in so doing. This contention is not well made, for Gregory, the man who had charge of the manufacture of sulphuric acid, admitted that he knew it was dangerous to pour hot acid into a metal container. Therefore, there was no error in this charge where the manager had actual knowledge of the danger incident thereto.

It is next contended that the court was in error in charging the jury that it might look to the usages of other manufacturers, and that if other large and successful manufacturers over the country successfully used like metal containers for sulphuric acid of like strength and temperature, without accident, the same might be looked to in determining whether the defendant exercised ordinary or reasonable care, and if the defendant did observe ordinary or reasonable care and skill in the delivery of the sulphuric acid in the metal container there was no liability. It was contended that this was error because it imposed on the defendant the duty to sell and deliver sulphuric acid in metal containers such as are used by large and successful manufacturers, and in effect charged liability if it sold and delivered acid otherwise, regardless of actual knowledge or actual negligence of the defendant,

and it was insisted that the court erred in refusing to charge defendant's special requests to the effect that if the steel drum was such as was successfully used by manufacturers and dealers in the manufacture, sale and delivery of the sulphuric acid, then the defendant is not guilty of any negligence and is not liable. We are of the opinion that the court did not err in this respect: That part of the charge with respect to the usage and custom of other successful manufacturers is not susceptible of the construction placed upon it by counsel for the defendant and if there is any error it is in favor of the defendant.

The court would have been in error had it charged the special request.

"It is hard to extract any well defined or satisfactory rule from the decisions which speak upon this question. A general custom of the persons or corporations engaged in a given business, to conduct that business in a given way and with given means, would seem to afford the most satisfactory evidence in support of the conclusion that they were conducting it with ordinary care. But when we come to consider that the standard demanded by law is not the ordinary care of men generally, but the ordinary care of prudent men, engaged in a particular employment or specialty, we must conclude that a custom which admits of a lower standard of care is a bad custom. If we recur to the principle that no custom will be allowed to affect the rights of parties which is either unlawful or unreasonable, and that the question of lawfulness or reasonableness of a custom is, in every case, a question of law for the court,—we must conclude that, in every case where a custom is appealed to for the purpose of determining whether or not a party has acted with reasonable care, skill and diligence, there is a preliminary question for the judge to determine, namely, whether the custom shall be allowed so to operate." See 1 Thompson on Negligence (2 Ed.), secs. 30-32; Davis v. Farris, 1 Tenn. App., 151.

These assignments are not well made and must be overruled.

And lastly that the court erred in overruling the special plea of the statute of limitations, in that the plaintiff had sought damages in a former action for the same injuries and after the plaintiff had concluded his case the defendant had moved for peremptory instructions, the plaintiff was permitted to take a nonsuit and he instituted this suit more than twelve months after the cause of action accrued. This contention is not well made for two reasons: first, he had a right to take a nonsuit in the original case and bring this suit. See Bracken v. McGannon, 137 Tenn., 207, 192 S. W., 922. Second, the deceased was an infant when the first suit was tried and nonsuit taken, and when this suit was instituted. The decision in the first case was not

res adjudicata because it was not tried on its merits, and the statute of limitations does not bar an infant. An infant may bring suit after the removal of his disability. Boyd v. Merchants' Delivery Co., 7 Tenn. App., 416; 37 C. J., 1018-1024.

It results that all of the assignments of error must be overruled, and the judgment of the lower court is affirmed. A judgment will be entered in this court for $4500 with interest thereon from February 28, 1928, to the present, in favor of the defendant in error, C. H. Vickers, administrator, and against the Read Phosphate Company. The cost of the cause, including the cost of the appeal, is decreed against the Read Phosphate.Company and the sureties on the appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.