POSTAL TELEGRAPH-CABLE CO. *v.* ZOPFI.

*(Nashville.* January 18, 1894.)

1. CONTRIBUTORY NEGLIGENCE. *Correct charge.*

In an action against a telegraph company for injuries incurred by plaintiff's infant daughter by her fall upon a telegraph-pole negligently left in front of his residence, where the defense is plaintiff's contributory negligence in failing to remove the pole himself within a reasonable time, it is not error for the Court to state, in addition to other unexceptionable propositions, that if such negligence of the plaintiff simply contributed to or assisted in bringing about the injury without being its efficient cause, while the defendant's negligence remained as the efficient and controlling cause, then plaintiff's contributory negligence will not defeat the action entirely, but must be considered in mitigation of damages only.

Cases cited and approved: Dush *v.* Fitzhugh, 2 Lea, 307; Whirley *v.* Whiteman, 1 Head, 610; Railroad *v.* Fain, 12 Lea, 40; Railroad *v.* Fleming, 14 Lea, 135.

2. SAME. *Concurrent with natural cause.*

One who has negligently left a telegraph-pole in an improper position is liable for injury sustained from a fall upon it by one necessarily stepping over it, although the wetting, by rain, of the platform on which such person steps may contribute partially or wholly to his fall, when it is reasonably certain that the latter cause alone would not have been sufficient to produce the injury sustained.

Cases cited and approved: Deming *v.* Cotton Press Co., 90 Tenn., 353; Railroad *v.* Kelly, 91 Tenn., 705; 41 Am. Rep., 612; 27 Am. Rep., 396; 50 Am. Rep., 567; 22 Am. Rep., 733; 16 Am. Rep., 33; 4 L. R. A., 406.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

24—9 P

VERTREES & VERTREES for the Telegraph Company.

JAS. TRIMBLE, JNO. RUHM & SON, E. L. GREGORY, and A. J. CALDWELL for Zopfi.

WILKES, J. This is an action for damages for personal injuries sustained by the plaintiff's minor daughter at the hands of the defendant, Postal Telegraph-Cable Company. Plaintiff seeks a recovery upon the ground of loss of services of his daughter.

There was a trial before the Court and jury, resulting in verdict and judgment for the plaintiff for $1,159 and costs, from which the telegraph company has appealed, and it has assigned errors.

The errors assigned are to the charge of the Court as given, and the refusal to give other charges as requested, and that the verdict is not sustained by the evidence.

The plaintiff is a farmer and dairyman, living on the Gallatin pike about three miles north of Nashville. In September, 1890, his daughter Emma, then about thirteen years of age, was returning to her home from school along the turnpike road one evening through a rain. She was carrying an umbrella over her and had a satchel of books in her hands. When she reached her father's place, she attempted to pass from the turnpike over some stepping-stones to the front gate. In front of this gate there was a platform, which had been constructed by the plaintiff to avoid stepping in the mud in

passing through the gate. This platform was about four feet wide and four and a half feet long. There is some controversy and uncertainty about its elevation or height above the ground, but it was probably about fifteen inches high.

The telegraph company was then engaged in constructing a line along the turnpike between Nashville and Gallatin, and had hauled long poles on wagons, and thrown them out at intervals along the road on the side next to plaintiff's premises. One of these peeled chestnut poles was thrown partially in front of this platform, the larger end extending about one-half the length of the platform. The smaller end extended about thirty feet towards Nashville, along and in front of plaintiff's yard. There is some conflict and uncertainty about the size of this pole, but it is conceded by defendant that it had a circumference of twenty-seven and a diameter of nine inches at its larger end, in front of the platform. It was thrown about six inches from the stepping-stone, which was flush with the ground, and about twelve or fifteen inches from the edge of the platform. It lay between the stepping-stone and the platform, and in passing from the stone onto the platform and through the plaintiff's front gate, a person must necessarily step on or over it. This could be avoided by passing around the end of the pole a few feet, through the mud and water, and thus reaching the platform without crossing the pole.

The young girl had not been in the habit of

going to school by this route, but usually went through a side gate and her father's field or lot, reaching the pike at a different point.

A short time before the accident occurred, the field had been plowed up, and she could not at this time reach her father's house by the usual route on account of the rain and plowed ground. In attempting to pass on this occasion from the stepping-stone onto the platform and through the gate, the young lady did not step on the pole, but over or across it to the platform, when the platform, being saturated and slick with the falling rain, her foot slipped on the platform, and she fell backward, her hip striking the pole. The consequence was a severe injury, which confined her to her bed for many months, and permanently crippled and disabled her. She suffered great pain, and for some time her life was dispaired of, but for this pain no damages are sought in this action, another suit having been brought for her benefit in the Federal Court on this account.

Among other things, the Court charged the jury as follows: "If the proof shows that the plaintiff knew, or by the exercise of ordinary care and diligence might have known, that the pole was so placed in front of his gate and platform as to render it dangerous for a child of his daughter's age, strength, and discretion to attempt to pass over it, then it was his duty to have removed it from such a position within a reasonable time."

Defendant does not except to this part of the

charge, but the complaint is that it was afterward so limited as to mislead the jury, as follows: "And if he failed to so remove it within such reasonable time, and his negligence thereby became the efficient and proximate cause of the injury, he would not be entitled to recover. But if the negligence of the plaintiff simply contributed to, or assisted in bringing about, the injury, without being its efficient cause, while the negligence of defendant remained as the efficient and controlling cause, in such case the contributory negligence of plaintiff would not defeat the action entirely, but must be considered by way of mitigating or lessening the damages."

We do not think there is any error in this charge as given, but that it is in accord with our decisions. See *Dush* v. *Fitzhugh*, 2 Lea, 307; *Whirley* v. *Whiteman*, 1 Head, 610; *Railroad* v. *Fain*, 12 Lea, 40; *Railroad* v. *Fleming*, 14 Lea, 135, and other cases.

Again, it is said the Court erred in the following charge: "In all cases where the negligence of two or more persons happens about the same time and place, and also where the negligence of the defendant, if any be proven, concurs in time and in place with some natural cause for which he could not be held responsible—such as, in this case, the wetting of the platform by rain—and it appears to your satisfaction, by a preponderance of the evidence, defendant's negligence so directly contributed to the accident that it is reasonably certain that the

other cause alone would not have been sufficient to produce it, the defendant would be liable."

We think there is no error in the charge thus given, and the trial Judge drew a proper distinction between the *cause of the fall* and the *proximate cause, of the injury*. This is well illustrated in the case of *Denning* v. *Cotton Compress Co.,* 6 Pickle, 353. In that case the rule is laid down as follows: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes, or fails to prevent, the injury—an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted, notwithstanding the latter." In that case fire destroyed the cotton, and it was therefore said that it was the proximate cause of the loss; and the Court said: "It is true that the fire destroyed the cotton, and in that sense caused the loss, but it appears that, notwithstanding the occurrence of the fire, the cotton would not have been burned by it had not the breaking of the train while it was being removed happened, so that, but for this fact, the cotton would have been saved. This must therefore be held to be the proximate cause of the loss, and if it was the result of negligence, the carrier must answer for it."

It is again illustrated in the case of the *Railroad Company* v. *Kelly,* 7 Pickle, 705, where goods were consumed by a fire which was not the result of defendant's negligence; but the goods would never

have become exposed to the fire but for the negligent failure and refusal to deliver the goods on demand previous to the fire, so that, while the fire caused the loss, the failure to deliver caused the injury.

This charge of the Court is strictly in accord with the text-books and the decisions of other States. Shearman & Redfield on Negligence, Sec. 31 *et seq.;* Thompson on Negligence, 1085, Sec. 3; Bishop on Non-Contract Law, Secs. 39, 450, 452; Sutherland on Damages (2d Ed.), Sec. 16; *Crawfordsville* v. *Smith,* 41 Am. Rep., 612; *Atlanta* v. *Wilson,* 27 Am. Rep., 396; *Campbell* v. *Stillwater,* 50 Am. Rep., 567; *Hey* v. *Philadelphia,* 22 Am. Rep., 733; *Baldwin* v. *Turnpike Co.,* 16 Am. Rep., 33; *Cohen* v. *New York,* 4 L. R. A., 406.

A familiar illustration is the fall of a person upon an ice-covered pavement into an open cellar. In such case the ice is the cause of the fall, but the open cellar may cause an injury which, but for it, would not have occurred.

We do not deem it necessary to notice in detail the specific requests asked. The charge was full and fair, and more favorable to defendant than it could expect.

The question was fairly left to the jury to determine whether the young lady, in consequence of the pole, was compelled to make a higher, longer, or different step than she would have made if the pole had not been there, and whether or not it contributed directly to the fall.

Under the view we have taken, the company would be liable even if this were not so, if its negligence made the injury greater than it would have been in the absence of the pole, and whether the fall was occasioned alone by the slippery condition of the platform or by the presence of the pole, or both. But for the presence of the pole, the fall, if it had occurred, would probably have been attended with no serious injury.

In this view of the case, it is useless to consider the testimony in detail, as there is abundant evidence to sustain the verdict.

No complaint is made of the amount of the verdict. Nor could there be any just ground for complaint, as it appears that plaintiff has already paid out more than one-half the recovery in the satisfaction of doctors' bills and wages to nurses, besides losing the services of an industrious daughter.

We see no error in the judgment of the Court below, and it is affirmed with costs.