MRS. ATLANTA YARBROUGH, Administratrix, v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, et al.

Middle Section. March 29, 1930.

Petition for Certiorari denied by Supreme Court, May 30, 1930.

R. A. Gardner and Dancey Fort, of Clarksville, for plaintiff in error.

Gholson & Stout and Robt. L. McReynolds, of Clarksville, for defendant in error.

FAW, P. J.   Tenth street crosses the main track of the Louisville & Nashville Railroad Company, at grade, within the corporate limits of the City of Clarksville.   During the month of October, 1926, and for many years theretofore, the Citizens Railway

Company, a Tennessee corporation, operated electric street cars on certain streets of the City of Clarksville, including Tenth street, under a franchise from the city.

About seven thirty o'clock in the evening of October 2, 1926, a passenger train of the Louisville & Nashville Railroad Company collided with one of the street cars of the Citizens Railway Company on the aforesaid Tenth street crossing, and, as a result of the collision, Charles Yarbrough, a passenger on the street car, was killed instantly.

On January 8, 1927, Mrs. Atlanta Yarbrough, the widow of the said Charles Yarbrough, as administratrix of the estate of her deceased husband, brought this action against the Louisville & Nashville Railroad Company, the Citizens Railway Company and the City of Clarksville, a municipal corporation, for $25,000, as damages for the death of her intestate, which, she averred, had been caused by the concurring negligence of the three defendants named.

A demurrer of the City of Clarksville (hereinafter called the city) to the original declaration of the plaintiff was sustained, but, at the same time, the court permitted the plaintiff to file an amended declaration, to which the city again interposed a demurrer, but the latter demurrer was overruled.

The plaintiff was permitted to take a voluntary non-suit as to the Louisville & Nashville Railroad Company, and thereupon the city and the Citizens Railway Company each filed a plea of not guilty, and the city also pleaded that "the plaintiff has for a valuable consideration settled its action in this case with the defendant Railroad Company, and having settled with one of the joint tort-feasors, the city is thereby discharged from any liability."

At the first trial of the case the jury failed to agree and a mistrial was entered. The case was again tried to a jury and the jury found the issues in favor of the plaintiff, and found "the defendants, Citizens Railway Company and City of Clarksville, guilty of the matters alleged in plaintiff's declaration," and assessed plaintiff's damages by reason thereof at $8500.

A motion for a new trial was filed on behalf of each of the defendants, and on the hearing of these motions the trial court held that the verdict was excessive, but that if the plaintiff would accept a remittitur to the extent of $3500 the motions would be overruled. Thereupon, plaintiff, by counsel, "appeared and made such remittitur of $3500, thereby reducing the verdict of the jury to $5000, but did so under protest and excepted to this action of the court."

Upon the plaintiff's acceptance of the remittitur as aforesaid, the court overruled the motions for a new trial, and judgment was

entered in favor of the plaintiff and against the city and the Citizens Railway Company for $5000 and all the costs of the cause, upon which judgment a lien was declared to secure the reasonable fees of the plaintiff's attorneys.

The city and the Citizens Railway Company each excepted to the action of the trial court in overruling their respective motions for a new trial and pronouncing judgment against them, and prayed an appeal to this court, which was granted, but the Citizens Railway Company did not perfect its appeal and is not a party to the cause in this court. The city perfected its appeal and has assigned errors upon the verdict, and judgment and certain rulings of the trial court.

The final judgment entry in the court below also contains recitals as follows:

"To the action of the court suggesting a remittitur of $3500 and ordering a new trial if the plaintiff did not accept and enter into such remittitur, plaintiff excepts and plaintiff prays an appeal from that action and order of the court and from the judgment of the court for $5000 instead of $8500, to the next term of the Court of Appeals of Tennessee at Nashville, which appeal is by the court granted upon plaintiff entering into a sufficient bond for appeal or filing the pauper's oath in lieu thereof, and upon motion of plaintiff and for good cause shown, she is allowed thirty days in which to file her bill of exceptions and bond or pauper's oath."

Plaintiff filed the required oath for poor persons in due season and in due form, and has assigned error in this court upon the action of the trial court in requiring a remittitur as aforesaid; but we are of the opinion that, upon the record in this case, the plaintiff is concluded by her acceptance of the remittitur suggested by the trial court, and is not entitled to a review by this court of the action of the trial court in suggesting such remittitur.

Plaintiff's assignment of error is that, "the court erred in requiring the plaintiff to remit $3500 of the verdict rendered by the jury, thus reducing the recovery to $5000, for the reason that the verdict of the jury was not so excessive as to indicate passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury, and the trial judge expressly so held."

The record shows that the trial judge stated, when he suggested the remittitur, that, in his opinion, the verdict did not show passion, caprice and prejudice, but that, in his opinion, the verdict of the jury was excessive, and, for that reason, he would grant a new trial, unless the plaintiff would accept a remittitur of $3500.

The power of trial courts to require a remittitur as a condition of the refusal of a new trial, where, in the opinion of the court, the

verdict is so large as to evince passion, prejudice or caprice on the part of the jury, is well established and unquestioned. The contention on behalf of plaintiff is that it is only in cases where there is such an appearance of passion, prejudice or caprice, etc., on the part of the jury that the trial court has power to suggest a remittitur. But it was distinctly held in the case of Grant v. Railroad (1913), 129 Tenn., 398, 406, 409, 165 S. W., 963, that the power of the trial court to suggest a remittitur, in a case of tort involving unliquidated damages, may be exercised where the verdict is merely excessive, and is not limited to cases where passion, prejudice or caprice, etc., on the part of the jury appears.

Prior to the Act of 1911, ch. 29 (Shan. Anno. Code, 4852a1), the acceptance of a remittitur suggested by the trial court was a binding election on the part of the plaintiff, and he could not appeal from such action of the court. The provisions of the aforesaid Act of 1911 are as follows:

"That hereinafter in all jury trials had in civil actions in this State, after the verdict has been rendered, and on motion for a new trial, whenever the trial judge is of the opinion that the verdict in favor of a party is so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury, and a remittitur is suggested by him on that account with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur, a new trial will be awarded. The said party in whose favor such verdict has been rendered may make said remittitur under protest and appeal from the action of the trial judge with regard thereto to the Court of Civil Appeals, and if in the opinion of said Court of Civil Appeals the verdict of the jury is not so excessive as to indicate passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury, and the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the Court of Civil Appeals for the full amount originally awarded by the jury in the trial court."

It seems that, by the plain terms of the statute, the right of a plaintiff to appeal from a remittitur suggested by the trial judge extends only to those cases wherein "the trial judge is of the opinion that the verdict in favor of a party is so excessive as to indicate passion, prejudice, corruption, partiality or unaccountable caprice on the part of the jury, and the remittitur is suggested by him on that account."

Clearly the instant case does not fall within the provisions of the statute, and, therefore, plaintiff's election to accept the remittitur

was conclusive, her "protest" was unavailing, her appeal was ineffective, and her assignment of error must be overruled.

In discussing the assignments of error of the city, we will continue to refer to Mrs. Yarbrough, administratrix, as plaintiff, and to the city and the Citizens Railway Company as defendants.

The city has presented six assignments of error. The first three assignments are that (1) the court erred in overruling the demurrer to the amended declaration of June 26, 1928, because there was no cause of action contained in said declaration against the city, (2) the court erred in refusing to sustain the city's motion for peremptory instructions at the conclusion of all the evidence, and (3) there is no evidence against the City of Clarksville to support the verdict of the jury and the judgment of the court.

There was, in our opinion, evidence admitted at the trial from which the jury could have found that all the material averments of the plaintiff's amended declaration (against the city) were true. The material facts of the case are set forth in the second count, which we here quote in full, as follows:

"The Citizens Railway Company was, on October 2, 1926, operating its line of street railway in the City of Clarksville under a franchise granted it by said city and carried annually on its street cars approximately two hundred and fifty thousand passengers, and said City of Clarksville, at that time and for many years prior thereto, owned and operated a waterworks plant and system consisting of a pumping station, standpipe and many miles of water mains and pipes connecting therewith, and furnished and sold water for profit to residents of said city. Said water system was under the control of and management of a superintendent thereof appointed by said City of Clarksville and, on October 2, 1926, the superintendent thereof was one J. R. Manning. At that time and for some time prior thereto, said City of Clarksville had and maintained a connecting pipe from its water main on the west side of Tenth street extending under the surface of said street and under the track of Citizens Railway Company to the premises at No. —— on the east side of Tenth street, and for more than two weeks prior to October 2, 1926, said connecting pipe had leaked and there had been a continuous excessive discharge of water from said connecting pipe from under the surface of the street between the rails of the track of the Citizens Railway Company on and onto the surface of Tenth street at a point north of the Louisville & Nashville passenger station, which caused particles of soil to accumulate on and along and run down on and along the track of the rails

of the defendant, Citizens Railway Company, rendering the rails so slick and slippery that for that entire time, street cars could not be controlled by their brakes or other means and held on the grade on Tenth street. The only means by which Citizens Railway Company could overcome the slick condition resulting from said discharge of water was by sanding the rails on its track. The water from said leaking pipe during the two weeks above-mentioned continually ran down along and on said rails, and said street was an important street and had a large amount of traffic thereon, automobiles and other vehicles, traveling on it north and south, and crossing it at the intersection of Commerce street near the Louisville & Nashville passenger station, and just north of the Louisville and Nashville crossing on Tenth street. Said automobiles and other vehicles using said street frequently ran on the rails of said street car track and crossed it and in so doing so splashed said running water upon said rails and washed the sand placed thereon by the Citizens Railway Company and its employees for the purpose of enabling them to control and stop their street cars from said rail and thereby rendered the sand on the rails ineffective. Said Citizens Railway Company, during said period of two or more weeks, sanded said track frequently every day and used a large quantity of sand thereon. The condition at the point named on Tenth street resulted in a situation of grave danger to passengers using said street cars of the defendant Citizens Railway Company and made it probable that injuries would result to them from street cars sliding down the grade on Tenth street and onto the crossing of the Louisville & Nashville Railroad Company before approaching trains and should have been reasonably anticipated from the fact that the rails could not be kept properly sanded and the street car stopped and held by means of their brakes or otherwise and this condition was well known to the defendant City of Clarksville and was reported to the said J. R. Manning, superintendent of said waterworks, by said Citizens Railway Company, more than two weeks before October 2, 1926, and said City of Clarksville urged to remedy said dangerous condition. Said defendant City of Clarksville as aforesaid, owned and operated said waterworks system, of which said connecting pipe was a part, for profit, and said City of Clarksville and it alone, had the power and authority to repair said leaking connecting pipe and could easily and quickly and inexpensively, by the exercise of ordinary care, have repaired said leaking connecting pipe and prevented the continuous discharge onto and running down

said rails of said water, carrying small particles of soil, and could thus have prevented and remedied, by the exercise of ordinary care and prudence, the situation and condition of danger to passengers using said street cars.

"On October 2, 1926, plaintiff's intestate, Charles Yarbrough, was a passenger on one of Citizens Railway Company's cars and had paid his fare as a regular passenger and was traveling south on Tenth street and down grade as aforesaid. Said car was being operated by and in charge of a motorman and conductor, employees of said Citizens Railway Company, and when said car reached the station on Tenth street near the Louisville & Nashville passenger depot 'and about ———— feet from the Louisville & Nashville crossing on Tenth street, passenger train No. 102 of defendant Louisville & Nashville Railroad Company approached the crossing of Tenth street from the south and approximately ———— yards from the south of the crossing. The agents and employees of the Citizens Railway Company had from time to time as appeared necessary during the period said dangerous condition existed on Tenth street, and on October 2, 1926, sanded the track on Tenth street where said water ran, but the water from the leaking pipe which the defendant City of Clarksville had negligently permitted to leak and negligently neglected and refused to repair had washed the sand off the track or the sand had been washed off by said water being splashed thereon by vehicles using Tenth street and when the street car upon which plaintiff's intestate was a passenger reached the station maintained by Citizens Railway Company near the Louisville & Nashville passenger station, the motorman and conductor in charge of said street car applied the brakes on the front and rear of the car, but by reason of the wet and slick condition of the rails and the absence of sand thereon, resulting from the condition of Tenth street as aforesaid, caused by the carelessness and negligence of said City of Clarksville as aforesaid, the motorman and conductor were unable to bring the car to a stop, although the wheels were completely locked and the street car continued to slip and slide toward the Louisville & Nashville railroad track until it slipped upon the track in front of said approaching Louisville & Nashville passenger train when said Railroad Company carelessly and negligently ran said train upon and against said street car on which plaintiff's intestate was a passenger, overturning and completely demolishing the car and inflicting wounds upon him from which he died. The motorman and conductor in charge of the street car gave no notice to

464

plaintiff's intestate of their inability to stop the car, although they knew they were unable to do so, and knew that the train was approaching and a collision imminent.

"The continuous and excessive flow of water on Tenth street which ran down and on the rails of said Citizens Railway Company rendered the operation of street cars on Tenth street highly dangerous to passengers thereon for the reason that it washed sand off the track and rendered it impossible to keep the track sanded and kept the track in such slick and slippery condition that it was impossible to control the cars and created a condition of special danger to passengers on street cars at the point on Tenth street just before reaching the track of the Louisville & Nashville Railroad Company for the reason that the street and the track of Citizens Railway Company are both on steep grades at the point mentioned and street cars were likely at any time to become unmanageable, to get out of control and slide upon said railroad track in front of an approaching train. Although the defendant City of Clarksville was notified of the negligent condition and the danger to passengers on street cars resulting therefrom, said City of Clarksville carelessly, negligently and recklessly refused and neglected to do anything to remedy or repair said condition.

"Said street car was visible to the fireman and engineer on train No. 102 for more than twenty feet from the crossing and could have been seen by said engineer and fireman ——— yards before reaching the crossing and said street car was approaching the crossing slowly and contrary to its usual custom and in such manner that it should have been apparent to the engineer and fireman that it could not be stopped, but that it would enter upon the crossing and be struck by the train, unless the train was stopped. Notwithstanding this situation, which was seen by the engineer and the fireman, or could and should have been seen by them by the exercise of ordinary care, said engineer and fireman did not put on the brakes or use any other means to stop the train and avoid the injury until too late to do so and consequently struck the street car and inflicted injuries upon plaintiff's intestate from which he died, as aforesaid.

"Plaintiff charges that the defendant Citizens Railway Company was guilty of negligence in that it failed to keep its rails properly sanded so as to provide sufficient friction to cause the brakes to hold when applied and in that it failed to give plaintiff's intestate any notice or warning of its inability to stop

the car when the motorman and conductor in charge thereof knew that they were unable to do so.

"The defendant City of Clarksville was guilty of negligence in that it failed to exercise ordinary care to maintain Tenth street in a reasonably safe condition for travel and in that it carelessly, negligently and recklessly permitted said leak to remain in said pipe on Tenth street, and said water to flow down upon and along the rails of said Citizens Railway Company, carrying small particles of soil as aforesaid, and carelessly, negligently and recklessly failed and refused to repair said leaking pipe or do anything to remedy the dangerous condition resulting therefrom, after it knew and had notice of said leaking pipe, running water and dangerous condition resulting therefrom, but thus carelessly, negligently and recklessly permitted said condition, which constituted a temporary nuisance to remain and exist on said Tenth street.

"The defendant Louisville & Nashville Railroad Company was guilty of negligence in that it failed to take any steps or use any means to stop its trains when it was apparent or should have been apparent by ordinary care that said street car was unmanageable and out of control and was about to move on its track in front of the moving train and that a collision was imminent.

"Plaintiff avers that the negligence of each of the defendants set out above concurred to constitute and were the direct and proximate cause of the death of plaintiff's intestate.

"Plaintiff's intestate left at his death as his widow and next of kin, Mrs. Atlanta Yarbrough, his widow, and Annie Wickham, Fannie Wickham, Kate Evans, Arthur Yabrough, Benton Yarbrough and Durward Yarbrough, his children, for whose benefit this suit is brought.

"Plaintiff was appointed and qualified in the County Court of Montgomery county, Tennessee, as administratrix of the said Charles Yarbrough, October 7, 1926, and letters testamentary issued to her, a certified copy of which is hereby shown to the court and filed as a part hereof and marked Exhibit #1.

"On December 29, 1926, plaintiff caused written notice to be served upon H. M. Cooley, mayor of the City of Clarksville, giving the notice prescribed by Chapter 55 of the Acts of 1913, a true copy of which is here shown to the court and filed as a part hereof and marked, Exhibit #2.

"Therefore, plaintiff sues the defendants for $25,000 damages and demands a jury to try this cause."

The city's demurrer to the declaration and its motion for peremptory instructions (which was, in legal effect, a demurrer to the evi-

dence) presented, in large measure, the same legal questions. This was a logical consequence of the fact that there was evidence to support the averments of the declaration. If the declaration stated a good cause of action and there was any material evidence reasonably tending to prove the averments of the declaration, it will follow that the first three assignments of error, supra, must be overruled.

So far as they need be stated for present purposes, the grounds of the city's demurrer to the declaration were that the declaration stated no cause of action against the city, for the reason that (1) the city was not required to keep the tracks of the Street Railway Company in safe condition, (2) the city was not liable for failure to repair a leak in a service pipe connecting the city's main water pipe in the street with the private property of an abutting lot owner, (3) the acts complained of did not constitute a nuisance, and (4) the declaration showed on its face that, if the city was guilty of negligence, such negligence was not the proximate cause of the injury and death of plaintiff's intestate.

The motion for peremptory instructions made at the close of all the evidence contained eight separate specifications of the grounds upon which the city based its motion for a directed verdict, which specifications embrace the grounds of the demurrer to the declaration, supra, and, assert further (1) that the city was not required to make special provisions for particular vehicles, (2) that the defendant City of Clarksville was discharged from liability by reason of the fact that the plaintiff had settled with the Louisville & Nashville Railroad Company, one of the joint tortfeasors sued in this case, and (3) that the proof shows that the defendant City of Clarksville used due diligence to locate and repair the leak in the water pipe complained of, and did all that a reasonably prudent person would have done under the circumstances.

It may be well to point out, at this time, certain rules of law which, we think, control this case.

A nuisance "in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." 20 R. C. L., p. 380, sec. 1.

Anything which renders a public highway unsafe for travelers thereon is a nuisance. Franklin Turnpike Co. v. Crockett, 2 Sneed 263; Southern Railway Co. v. State, 130 Tenn., 261, 169 S. W., 1173; Grant v. Railroad, 129 Tenn., 398, 165 S. W., 963; Lowery v. Petree, 8 Lea, 674, 678; 20 R. C. L., p. 399, sec. 21, citing a large number of cases to the point.

If a municipality permits its streets to get so out of repair or obstructed as to become a public nuisance it is liable to indictment. Southern Railway Co. v. State, supra, p. 264; State v. Barksdale, 5

Humph., 153; State v. Murfreesboro, 11 Humph., 216; Hill v. State, 4 Sneed, 443; Chattanooga v. State, 5 Sneed, 577; State v. Loudon, 3 Head, 263.

"It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and anyone is injured, it is liable for the damages sustained." Chicago v. Robbins, 67 U. S. 418, 17 L. Ed., 298, 302.

Municipal corporations "are under the absolute duty of exercising reasonable care to the end that their streets and sidewalks are kept free from nuisances, and safe for the public travel." Nashville v. Fertilizer Co., 127 Tenn., 107, 113, 153 S. W., 838. This principle has been recognized and applied in numerous Tennessee cases. Knoxville v. Lively, 141 Tenn., 22, 31, 206 S. W., 180; Doyle v. Chattanooga, 128 Tenn., 433, 446, 161 S. W., 997; Oliver v. Nashville, 106 Tenn., 273, 277, 61 S. W., 89; Knoxville v. Harth, 105 Tenn., 436, 439, 58 S. W., 650; Knoxville v. Bell, 12 Lea, 157, 158; Niblett v. Nashville, 12 Heisk., 684, 688; Mayor, etc., v. Brown, 9 Heisk., 1, 11; Memphis v. Lasser, 9 Humph., 756, 761.

In the operation of its water plant the city was exercising a governmental function. Smiddy v. Memphis, 140 Tenn., 97, 103, 203 S. W., 512. But, "even though the Act be of a governmental nature, the city cannot commit a nuisance in the discharge of such a duty, and, if it does, it is liable for damages resulting therefrom." City of Knoxville v. Lively, supra, p. 27, and other cases there cited; City of Nashville v. Mason, 137 Tenn., 169, 173, 192 S. W., 915.

"Where a municipal corporation creates or permits a nuisance by nonfeasance or misfeasance, it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable for damages in a civil action to any person suffering special injury therefrom, irrespective of the question of negligence; and such liability cannot be avoided on the ground that the municipality was exercising governmental powers." 43 C. J., p. 956, sec. 1734.

"The fact that a railroad or street railroad company has undertaken or is bound to maintain and repair a street occupied by it will not relieve the municipality from liability to a person injured." 43 C. J., pp. 980-981, sections 1761, 1763.

In this age, we think it a safe legal postulate to assume that riding on a street car on the streets of a city is an "ordinary mode of travel," and that the city is liable for a negligent failure to abate a nuisance which proximately causes an injury to one thus using the street. Knoxville v. Lively, supra.

In the case of Telegraph & Telephone Co. v. Electric Railway Co., 93 Tenn., 492, 503, 29 S. W., 104, the court said:

"With rare unanimity the courts have concurred in holding that an electric street railway, constructed and operated upon the streets by means of an overhead trolley wire supported by poles, with permission of the public authorities, for the transportation of passengers only, and conforming its track to the surface of the ground, is not an additional servitude upon the fee within the streets, but a legitimate use of the streets within the original general purpose of their dedication. 2 Am. R. R. & Corp. Cas. (R. I.), 44; 47 N. J. Eq., 380; 3 Ohio Cir. Ct. R., 425; 85 Mich., 634; 12 L. R. A. (Ohio), 534; 139 Pa. St., 419, 6 Am. R. R. & Corp. Cas., 335. Streets were designed to afford facilities for the inter-communication of the multitudes of people assembled within cities and towns. New and improved methods of travel, devised to meet the growing demands of increased population and suburban life, are within the original general purpose for which streets were created.

"Electric street railways, constructed and operated as stated, are but a modern and improved use of the streets as public ways, affording, without considerable public inconvenience or obstruction of other proper use of the streets, the facilities for cheap, rapid, reliable, and convenient transportation, so essential to the population of large cities and their suburban additions. The growth and extension of cities must have been contemplated when the streets were established. Such use of the streets, whether new or old, as would best accommodate the increased population must have been likewise contemplated. That the electric railways use the streets only by statutory permission or regulation, cannot affect the question, as the Legislature may undoubtedly regulate the ordinary use of streets. The objections urged against the electric railway would exclude the horse car and the cable car; and the result would be to magnify the abutter's insignificant interest in the fee into an importance and value never contemplated by either party, and to subject the public to the burden and inconvenience of making new condemnations of the fee upon the introduction of any new and improved method of using the streets. We hold the electric street railway a legitimate use of the street, within the original general purpose of dedication, and therefore an ordinary use."

See also, Railway Co. v. State, 87 Tenn., 746, 754, 11 S. W. 946.

The accepted definition of proximate cause in Tennessee is: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted." Chattanooga Light & Power Co. v. Hodges, 109 Tenn.,

331, 338, 70 S. W., 616, and other cases there cited; Fairbanks, Morse & Co. v. Gambill, 142 Tenn., 633, 643, 222 S. W., 5.

"Proximate cause is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and pre-dominant cause. Closeness in causal relation, rather, is the meaning." Grigsby & Co. v. Bratton, 128 Tenn., 597, 603, 163 S. W., 804.

The injury complained of need not be the necessary effect of the particular act of negligence held to be the proximate cause, but it must be the natural result, and one which, in the light of human experience, might well have been anticipated as possible, if not prob-able. The principle is that the wrongdoer is liable not only for the injury which immediately results from his act, but for such con-sequential injuries as, according to the common experience of men, were likely to result. Chattanooga Light & Power Co. v. Hodges, supra, pp. 338-339.

"The general rule is that what is the proximate cause of an in-jury is a question for the jury." Fairbanks, Morse & Co. v. Gam-bill, supra, p. 642; Moody v. Gulf Refining Co., 142 Tenn., 280, 289, 218 S. W., 817. Therefore, whether the city, in the instant case, should have reasonably anticipated that the street car might slide on the slick track and thus collide with the railroad train was a matter for the jury to determine. Id., pp. 644-645.

"Where the rule of an intervening efficient cause is relied on by the defendant, it is ordinarily a question for the jury whether there was such an intervening efficient cause as would prevent the negligent act or omission of the defendant from being the proximate cause of the injury." Moody v. Gulf Refining Co., supra, pp. 289-290.

"Where the wrongful acts of two or more persons concur as prox-imate causes of an injury, the wrongdoers are liable jointly or sep-arately, and the fault of one is no defense for the other or others." Beopple v. Railroad, 104 Tenn., 420, 428, 58 S. W., 231. See, to same effect, Postal Telegraph Co. v. Zopfi, 93 Tenn., 369, 24 S. W., 633; Columbia, etc., Turnpike Co. v. English, 139 Tenn., 634, 638, 202 S. W., 925; Cecil v. Jernigan, 4 Tenn. App. R., 80, 85.

So, in the instant case, the conditions produced by the water on the street railway track, as described in the declaration and shown by plaintiff's proof, continued to operate concurrently with the neg-ligence of the Street Railway Company, at the moment of the acci-dent, in producing it. The failure of the Street Railway Company to exercise proper care in the operation of its car was not an in-dependent, self-supporting act of negligence which solely caused the injury, or so operated as to make the city's negligence remote. Grigs-by & Co. v. Bratton, supra, pp. 603-604; Deming v. Merchants, etc., Co., 90 Tenn., 306, 353, 17 S. W., 89.

"The public right goes to the full width of the street and extends indefinitely upward and downward, so far at least as to prohibit encroachment upon said limits by any person by any means by which the enjoyment of said public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous." Wheeler v. Ft. Dodge (Iowa), 9 L. R. A. (N. S.) 146, 149, 108 N. W., 1057.

The authorities which we have cited, and a multitude of others which might be cited, establish the rule that the city has control and supervision of the public streets, and it is its duty to cause them to be kept in repair and free from nuisances, and it is liable for damage resulting from its negligence in the discharge of this duty. The city may grant permission to the owner of an abutting lot to connect a service pipe with the water main in the street, but the city cannot authorize a nuisance, and it is liable for damages resulting from its negligence in failing to abate a nuisance created by a leak in the service pipe under the surface of the street.

There is no occasion to extend this opinion by reviewing the evidence in the instant case. It would be merely a repetition of the facts stated in plaintiff's declaration, hereinbefore quoted, with some amplification of details, and, as we have heretofore said, we find that there is evidence in the record which, if accepted by the jury, was sufficient to prove the truth of the material averments of the declaration. It is not our duty, nor within our province, to consider the comparative credibility of witnesses or to determine conflicts of evidence. These were matters for the jury, and where we find that the jury had before it any material evidence reasonably tending to sustain an averment of the declaration, with respect to a fact essential to plaintiff's cause of action, we treat such fact as established, and discard all evidence tending to a contrary conclusion. Power Packing Co. v. Borum, 8 Tenn. App. R., 162, 165, and cases there cited.

Bearing in mind the duty of the city to keep its streets "free from nuisances and safe for the public travel," as that duty is defined by the authorities hereinbefore cited, we are of the opinion that the plaintiff's declaration states a good cause of action and the Circuit Court did not err in overruling the city's demurrer thereto.

It therefore follows, from our finding that there was evidence before the jury to sustain the material averments of the declaration, that the trial judge did not err in overruling the city's motion for a directed verdict.

There being evidence to take the case to the jury, it likewise follows, as a necessary sequence, that there was evidence to support the verdict of the jury.

The city's plea of accord and satisfaction was not a good defense under the proof. It was based on a simple covenant of the plaintiff not to sue the Louisville & Nashville Railroad Company, which did not operate as an accord and satisfaction as to the city. Smith v. Amusement Company, 128 Tenn., 112, 157 S. W., 900; Nashville Interurban Railway Co. v. Gregory, 137 Tenn., 422, 434, 193 S. W., 1053.

The city's first, second and third assignments of error are overruled, for the reasons stated.

The city's fourth assignment of error is that "the verdict of the jury is against the law and is against the law as charged by the court." This assignment is too vague and indefinite to constitute a good assignment of error, and for that reason it is overruled. See Record v. Cooperage Co., 108 Tenn., 657, 660, 69 S. W., 334; Felton v. Clarkson, 103 Tenn., 457, 459, 53 S. W., 733.

The city's fifth assignment is in these words: "The court erred in refusing to charge special requests set out on record pages 471 to 475, inclusive, and in overruling the fifth ground of the motion for a new trial. (See record, pages 78 to 81, inclusive.)"

This assignment does not conform to the rules of this court (151 Tenn., p. 815) and the Supreme Court (126 Tenn., p. 722), which require that assignments of error shall show "specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant, or plaintiff in error," and that "when the error alleged is upon the charge of the court, the part complained of, whether it be instructions given or instructions refused, shall be set out."

However, we have examined the pages of the record cited in the fifth assignment, supra (pages 471 to 475), inclusive, and pages 78 to 81, inclusive), and we find that they contain that part of the city's motion for a new trial based on the refusal of the trial judge to charge eleven special requests for instructions tendered by the city. The incorporation of special requests in the motion for a new trial, without more, would not afford a basis for an assignment of error, as a motion for a new trial is a mere pleading. Crosswy v. State, 157 Tenn., 363, 374, 8 S. W. (2d), 486. But we find that the eleven requests copied into the motion for a new trial were properly preserved by the bill of exceptions (at pages 464 to 469, inclusive, of the transcript), and we have examined them, in connection with the charge given to the jury. Insofar as these requests embody correct statements of law applicable to the facts of this case, they were, we think, sufficiently charged, and the fifth assignment of error is overruled.

Through its sixth (which is the last) assignment of error the city complains that the court erred in failing to charge the jury as to

the duty of the Louisville & Nashville Railroad Company under the facts presented, and in failing to charge the jury as to the negligence of the Louisville & Nashville Railroad Company under the facts presented.

There was no request for instructions of the character indicated in the sixth assignment, supra. Moreover, we do not think that the city was prejudiced by the omission to charge the jury with respect to the "duty" and the "negligence" of the Louisville & ⁀ ville Railroad Company, if, indeed, such charge would hav proper—the Louisville & Nashville Railroad Company not party to the action. Columbia etc., Turnpike Co. v. English, s. p. 638. The sixth assignment of error is overruled.

It results that all of the assignments of error are overruled and the judgment of the circuit court against the city is affirmed. · Judgment will accordingly be entered here in favor of the plaintiff Mrs. Atlanta Yarbrough as administratrix of the estate of Charles Yarbrough, deceased, against the defendant City of Clarksville for the sum of $5000, with interest thereon from the date of the judgment below (July 11, 1929), and for the costs of the cause accrued in the circuit court. The costs of the appeal will be adjudged against the City of Clarksville and the sureties on its appeal bond.

Crownover and DeWitt, JJ., concur.