WAYMOND D. GANNON, by Next Friend, v. T. H. CRICHLOW et al.

and

J. B. GANNON v. T. H. CRICHLOW et al.

Middle Section. April 14, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

Seth M. Walker and John J. Hooker, both of Nashville, for plaintiffs in error, Gannon.

James D. Richardson, of Murfreesboro, and Hume & Armistead, of Nashville, for defendants in error, Crichlow et al.

CROWNOVER, J. These two actions were tried together in the Circuit Court by consent of the parties. The first action was in-

stituted by Waymond D. Gannon, a minor, by his next friend, against Crichlow-Yearwood Company and Hilary Napier, to recover damages for personal injuries caused by the explosion of a dynamite cap averred to have been negligently left on the yard of the Inglewood School by the builders, the defendants in this case, and to have been exploded in a fire made by the janitor to burn the leaves, which resulted in injuries to the child.

In the second action, J. B. Gannon sued for loss of services of his minor son, caused by the injuries received in the same accident.

The defendants pleaded the general issue of not guilty.

At the close of plaintiffs' evidence, defendants moved for a directed verdict on the ground that there was no evidence adduced upon which a verdict on behalf of either plaintiff could be predicated, which motions were sustained by the court and the plaintiffs' suits were dismissed.

Plaintiffs' motions for a new trial having been overruled, they have appealed in error to this court and have assigned as error the court's action in sustaining such motions for peremptory instructions.

In July, 1929, the County of Davidson entered into a contract with T. H. Crichlow and L. N. Yearwood, a co-partnership doing business under the firm name of Crichlow-Yearwood Company, to construct a public school building in East Nashville, on Riverside Drive, to be known as the Inglewood School. This company employed Hilary Napier to do some of the work.

The building was erected in a small grove of four or five acres.

In excavating for the foundations and basement blasting was necessary, which was done with dynamite and caps. The blasting was done in July and August. No blasting was done by them after that time.

Before beginning work on the building, the Crichlow-Yearwood Company constructed a temporary tool house on the grounds in the school yard. One room of the house was used as an office and the other as a tool room. There were large cracks in the floor, some of them being one-half inch wide.

J. B. Gannon was hired as janitor at the Inglewood School, and began his employment on October 1, 1929.

The building was not completed in time for the opening of the fall school term, so the school was conducted in a tent on the grounds until October 23, 1929, when the building was finished, and two hundred and twenty children attended this school, seventy-three of them being between the ages of six and ten years.

J. B. Gannon several times saw copper covered dynamite caps, in the desk drawer in the office, in October, 1929.

Napier superintended the first blasting and used caps and fuses. After the accident, he told Gannon that he kept his dynamite caps in a drawer of the desk in the tool house and sometimes in a box on the floor.

After the school building was finished the County purchased this tool house from Crichlow-Yearwood Company. All of the property of said company was moved out of the building; and some of their tools and cement were put in the basement of the school house. About November 1, 1929, Gannon, the janitor, put his furniture into the building. On November 3rd the County moved this tool house to the rear of the school lot and permitted the janitor, J. B. Gannon, to occupy it as a residence.

On December 10, 1929, the janitor, J. B. Gannon, was cleaning up the school grounds and was raking up and burning the leaves on the spot formerly occupied by the tool house, this being a spot on which no grass was growing and where leaves had accumulated under the house. His little five year old son, Waymond D. Gannon, the plaintiff in this case, was assisting him by hauling the leaves in his wagon and throwing them on the fire. While he was throwing some leaves on the fire, an explosion occurred in the fire. It sounded like the explosion of a dynamite cap. The leaves were blown into the trees and a hole blown in the ground. A piece of the dynamite copper cap lodged in the little boy's arm and something was blown into his left eye which pierced the cornea and destroyed the sight. His father saw the piece of copper sticking in his arm and it resembled the material of the caps that he had seen in the desk drawer.

There was other blasting done on the grounds later than July and August, by other parties, for a septic tank, but only black powder was used, and not dynamite caps.

There are only two determinative questions involved in this case:

(1) Was there sufficient circumstantial evidence for the case to be submitted to the jury to determine whether the dynamite cap belonged to defendants and whether defendants negligently let the same fall through the floor of this temporary building in to the school yard?

(2) If so, was that negligence the direct and proximate cause of the explosion which caused the plaintiff's injuries, or, was the explosion the proximate result of an independent intervening cause?

1. We are of the opinion that there was sufficient evidence for the question to go to the jury as to whether the dynamite cap that injured the child had been left on these grounds by the defendants.

The proof is that some dynamite caps were kept in a desk drawer which was frequently seen open, and Napier stated that he had kept them in the desk drawer or in a box on the floor. Anyone handling dynamite and explosives is held to a high degree of care. Verran v. Town of Greeneville, 4 Tenn. App., 422.

"Anyone dealing with or using or handling explosives must exercise a high degree of care to prevent injury to property or persons. That care and caution to be applied in guarding dangerous substances is a degree of care and caution proportionate to the danger to others from coming into contact therewith." Nashville Ry. & Light Co. v. Williams, 11 Tenn. App., 1.

"The owner of a commodity so inherently dangerous as dynamite or nitroglycerin is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty." 22 R. C. L., 165, sec. 50.

Is a box on the floor of the office of a tool house, or the drawer of a desk, frequently opened, where the floor has cracks large enough to admit dynamite caps, a safe place to keep dynamite caps? They may be dropped on the floor in getting things out of the drawer or in moving the box from one place to another, and when the floor beneath the desk was so constructed that there were cracks a half inch wide in it, the connection between an explosion that happened on the exact site of this building and the dynamite caps in the drawer, was a question that should have been submitted to the jury.

It is insisted by the defendants that someone else could have brought dynamite caps to the school yard or that the dynamite cap might have been carried to that place by other means, but there is absolutely no proof that anyone else had dynamite caps about the school premises. Children and people, even workmen, do not usually carry dynamite or dynamite caps about in their pockets or leave them in the open unattended.

"The rule that the jury cannot determine by guess or conjecture between two equally probable causes of the injury, for only one of which the defendant is responsible, has no application where there is no substantial evidence of the existence of a sufficient cause, or causes for the injury, aside from the negligence charged." Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App., 34.

In other words, where there is absolutely no proof of any other probable cause of the injury then the jury cannot guess or conjecture that the injury was the effect of some other cause.

It is a well settled principle of law that negligence may be proved by circumstantial evidence. 45 C. J., 1261, sec. 834; 29 Cyc., 622; 20 R. C. L., 180, sec. 149; Walton & Co. v. Burchel, 121 Tenn., 715, 723-8, 121 S. W., 391; Nashville Ry. & Lt. Co. v. Harrison, 5 Tenn. App., 22; Nashville Ry. & Lt. Co. v. Williams, 11 Tenn. App., 1; Read Phosphate Co. v. Vickers, 11 Tenn. App., 156.

But it is argued for defendants that the evidence must be such that negligence can reasonably be inferred from the facts shown. There must be more than a mere probability that defendant was negligent. A verdict cannot be based on conjecture. 29 Cyc., 622, 625; 20 R. C. L., 181; Nashville Ry. & Light Co. v. Harrison, supra; L. & N. R. R. v. Dillehay, 3 Tenn. App., 476; Buckeye Co. v. Campagna, 146 Tenn., 396, 242 S. W., 646.

We are of the opinion that the cause of this accident is not a matter of speculation and conjecture, but the evidence tended to show that it resulted from one of the caps in the drawer having been dropped through a crack in the floor, and the explosion of the same being caused by the fire built to burn the leaves, therefore the question should have been submitted to the jury.

"Where the evidence in a personal injury case is so uncertain as to leave it equally clear and probable that the injury resulted from any one of a number of a causes that might be suggested, then and in that case a verdict for plaintiff would be pure speculation and could not be sustained; but, where the evidence, although circumstantial, is such that it would appear possible that the injury resulted from any one of several causes, and yet it points to the greater probability that it resulted from the specific cause charged by the plaintiff, a nonsuit should not be granted. In the latter case the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. The law does not anticipate, or attempt to exclude, mere possibilities." Adams v. Bunker Hill & S. Min. Co., 12 Idaho, 637, 89 Pac., 624, 11 L. R. A. (N. S.), 844; Railroad v. Shelton, 1 Hig., 187.

"There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a

reasonable juror in concluding that the thing charged was the prime and moving cause.'' Id.

''To support a recovery for alleged negligence the preponderance of the evidence must establish that plaintiff's injury was occasioned by a cause for which defendant is responsible, or, in other words, the causal connection between defendant's alleged wrongful act or omission and the injury to plaintiff. For this purpose, direct evidence is not essential, but the proof may be circumstantial; and the manner in which the injury occurred may, in the absence of positive proof, be established by reasonable inference from the physical facts shown. Proof beyond a reasonable doubt is not required nor is proof to an absolute certainty. While it has been said that the evidence must be such as to exclude all theories accounting for the accident which would be inconsistent with defendant's negligence, it has been held that the evidence need not exclude all other possible hypotheses, it being sufficient to exclude other reasonable hypotheses and to establish by a fair preponderance the hypothesis that the injury was due to defendant's act or omission.'' 45 C. J., 1267-8-9, sec. 835; R. R v. Shelton, supra.

''The question of whether defendant's negligence or conduct, or whether plaintiff's negligence or conduct, as the case may be, was or was not the or a proximate cause of the injury is ordinarily one for the jury. 'If there is no evidence connecting defendant's alleged negligence with plaintiff's injuries, or if such evidence as there may be amounts to mere speculation or conjecture, or if the only reasonable inference from the undisputed facts is that defendant's act was not the proximate cause thereof, the question of proximate cause is for the court. But where different conclusions may reasonably be drawn therefrom, the question is one for the jury.'' 45 C. J., 1316-7-8, sec. 876.

For a thorough discussion of this proposition, see 1 Jones on Evidence (2 Ed.), 629 et seq.

It is insisted that the court should have directed the verdict because the suit was predicated upon circumstantial evidence consisting exclusively of conjectures, inferences and presumptions, and that it is sought by the plaintiffs to pile inference upon inference, or inference upon conjecture or presumption, and thereby reach a conclusion as to the cause of the accident, and several cases are cited and relied upon. But, in this case, the inference is reasonably deducible from the facts proved. See 4 C. J., 853; Woodmen of the World v. Mankin, 5 Tenn. App., 188, 198; Adamant

Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170; R. R. v. Shelton, supra.

"The jury may find a fact from circumstantial evidence and the fact thus found may be used as the basis of a presumption in passing on other evidence, without contravening the rule that an inference cannot be based upon an inference." Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170, 178; Read Phosphate Co. v. Vickers, 11 Tenn. App., 156.

Inferential evidence is sufficient if not opposed to direct and positive testimony to the contrary. Swaggerty v. Stokely, 1 Swan. (Tenn.), 38; Bank v. Evans, 95 Tenn., 702, 34 S. W., 2.

"But the proof may be circumstantial and the manner in which the injury occurred may, in the absence of positive proof, be established by reasonable inference from the physical facts shown." 45 C. J., 1268-9.

Hence we hold that the proof was sufficient to carry the case to the jury on the proposition whether the dynamite cap had been left on these grounds through the negligence of the defendants.

2. We are of the opinion that the questions, whether the defendants' negligence in losing one of the dynamite caps was the proximate cause of the injuries, or whether the injuries were the proximate result of independent intervening causes, should have been submitted to the jury.

"The intervening act or event must be sufficient itself to stand as the cause of the injury, and be one but for which the injury would not have occurred. If the new cause merely accelerates an original cause which was sufficient to produce the injury, the first cause will still be the proximate cause, as where fire negligently started is spread by the wind. The intervening act or agency must have been one which could not reasonably have been anticipated by the primary wrongdoer, and must have superseded the original act or been itself responsible for the injury." 45 C. J., 930; Sprankle v. Mathis, 4 Higgins, 522; Read Phosphate Co. v. Vickers, 11 Tenn. App., 146; Telegraph Co. v. Zopfi, 93 Tenn., 369, 24 S. W., 633.

In Deming v. Merchants' Cotton Press, etc., Co., 90 Tenn., 306, 17 S. W., 89, the Supreme Court said:

"The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not happened, the injury would not have been inflicted." Fairbanks, Morse & Co. v. Gambill, 142 Tenn., 633, 222 S. W., 5; McBurgess v. Federal Life Ins. Co., 5 Tenn. App., 284.

"What is meant by 'proximate cause' is not necessarily that which is next or last in time or place, but that which is the procuring, efficient, and predominant cause. Closeness in causal relation, rather, is the meaning. Rosenbaum v. Shoffner, 98 Tenn., 630, 40 S. W., 1086, and cases cited; 13 Am. & Eng. L. (2 Ed.), 490; 7 Am. & Eng. L. (2 Ed.), 376." Grigsby v. Bratton, 128 Tenn., 597, 163 S. W., 804.

" 'Proximate cause' is one of which the injury is a natural and probable consequence, such a consequence as, under the circumstances might and ought to have been foreseen by the wrongdoer." Fairbanks, Morse & Co. v. Gambill, 142 Tenn., 633, 222 S. W., 5.

It is insisted that there were two independent intervening causes which broke the causal connection between the original negligence and the injuries, in that, first, it was not shown that the defendants removed the desk and the defendants' other property, including the dynamite caps, from the tool house to the basement of the school house, but rather the same was removed by the employees of the County without the defendants' procurement; and, second, the janitor, who was the father of the injured child, built the fire that exploded the dynamite cap and caused the injury.

Where an intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury, there is no liability for the original negligence, unless the new cause merely accelerates the original cause which was sufficient to produce the injury. 45 C. J., 930, sec. 490. But it is well settled that the mere fact that other causes, conditions, or agencies have intervened between defendants' negligence and the injury for which recovery is sought is not sufficient in law to relieve defendants from liability. In other words, an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable, notwithstanding the intervening act or event. 45 C. J., 926, sec. 489.

If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury. 45 C. J., 934, sec. 493.

Where an act or omission is negligent, it is not necessary to render it the proximate cause that the person committing it could

or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, or that it would occur to the particular person, if by the exercise of reasonable care it might have been foreseen or anticipated that some injury might result. 45 C. J., 918, sec. 484.

In handling explosives, "even the act of an intervening third person, contributing to the injurious result of the original negligence, does not in all cases excuse the original wrongdoer. If such intervening act could, or in the exercise of ordinary prudence should, have been foreseen, the original act still remains the proximate cause of the injury. If, for instance, a railroad company leaves a car of dynamite within a city and at a place prohibited by law, and by the explosion of the car injury is occasioned, causation is not arrested, and the railroad company relieved from liability, whether the explosion was occasioned by lightning, or by fire, or, as has been said obiter, by the act of some wrongdoer making a target of the car for rifle practice. . . . The mere fact that the particular form of injury was not foreseen will not relieve the defendant from liability, but if the intervening agency was something so unexpected or extraordinary that it could not or ought not to have been anticipated, the defendant will not be liable." 22 R. C. L., 166, sec. 50.

It takes little stretch of the imagination to anticipate that a stick of dynamite or a dynamite cap left on school grounds will sooner or later injure some child. If one turns loose a rattlesnake on the school grounds he should anticipate that some child would be injured.

We are of the opinion that there is nothing in the contention that there were independent intervening causes, for the reason that the proof shows that the defendants, Crichlow and Yearwood, sold the tool house to the County and knew that the County was going to remove it to the rear of the school grounds. Gannon testified that the stuff was moved out under the direction of Yearwood but he does not know whether Yearwood's employees or the County's employees removed the cement and tools to the basement of the school house, but we think it does not make any difference whether the County employees removed it or whether Yearwood's employees removed it. If Crichlow and Yearwood knew that the County was going to remove the building, it was their duty to first remove the dynamite caps so that the County employees and others would not be injured, as they are charged with a high degree of care in handling explosives.

We do not think that the building of the fire that exploded the dynamite cap was an independent intervening cause that should not have been anticipated by the defendants. The precise form or

manner of the injury need not be anticipated. They should have known that a loose dynamite cap would sooner or later hurt somebody, especially when left in a public place like a school yard. Gannon, the janitor, was not guilty of any negligence. He had a right to presume that the defendants would use a high degree of care in handling explosives and he had a right to think that they would properly care for these dynamite caps. Hence he was not guilty of negligence, and we think that there was sufficient evidence for all of these propositions to have been submitted to the jury, and that the cases of Clark v. DuPont Powder Co., 94 Kansas, 264, Ann. Cases 1917B, 340, and Henningsen v. Markowitz, 230 N. Y. S., 313, 132 Misc. Rep., 547, are in point.

It results that the assignments of errors must be sustained, the judgment of the lower court must be reversed in both cases, and the causes remanded to the Circuit Court of Davidson County for a new trial. The cost of the appeal is adjudged against the defendants, but the cost of the cause in the lower court will await the final determination of the case.

DeWitt, J., and Higgins, Sp. J., concur.